LEONA S. JUSTICE, APPELLEE, v. C. E. SHAW ET AL., APPELLANTS.

FILED APRIL 19, 1919.   No. 19925.

1. **Fraud:** EVIDENCE. The finding of the district court that the plaintiff was induced to convey the real estate which she seeks to recover in this action by means of fraud and false representations, *held* to be sustained by the evidence.

2. **Vendor and Purchaser:** BONA FIDE PURCHASER: BURDEN OF PROOF. The burden of proof is upon one who claims to be an innocent purchaser of property procured by fraud, to establish that he bought without knowledge or notice of the fraud.

3. **Lis Pendens.** Under section 7651, Rev. St. 1913, where such a purchaser fails to record his deed until after the filing of a notice of *lis pendens* in an action to set aside the deeds of his grantors, he is a subsequent purchaser and bound by the proceedings to the same extent as if he were made a party to the action.

APPEAL from the district court for Madison county: ALEXANDER R. OLESON, JUDGE. *Affirmed in part, and reversed in part.*

*J. B. Barnes, H. E. Siman, M. D. Tyler, Jack Koenigstein, M. F. Harrington, F. M. Tyrell, J. H. Walker* and *Mapes & McFarland,* for appellants.

*O. A. Abbott* and *James Nichols, contra.*

LETTON, J.

This is an action to set aside certain conveyances of real estate on the ground that the same were procured

by fraud. A judgment of the district court in favor of the plaintiff was appealed to this court and affirmed (without opinion). Argument has been had upon a motion for rehearing, and the case is now before us again.

Briefly stated, the facts as found by the district court are: That the plaintiff, a widow residing in Norfolk, was fraudulently induced to exchange several parcels of property in that city and an 80-acre farm for a hotel property in Denver, which was heavily incumbered. Certain representations were made to her by defendant Waddell and others, which have been abundantly proved to be false. It is unnecessary to repeat the whole story of the transaction, as we are convinced that the finding of the district court as to the fraud is amply sustained by the evidence. The title to her property was conveyed by Mrs. Justice to C. E. Shaw at Waddell's request, and was held by Shaw for Waddell.

The difficulty in the case is not as to the fraud, but arises out of the question whether the defendants Sattler, Crane and Christopher were severally innocent purchasers of part of the real estate conveyed by Mrs. Justice.

One who claims to be an innocent purchaser of real property from a person who recently acquired the title to the same by fraud must, in an action to set aside the conveyance, allege, and the burden of proof is upon him to establish, that he was a *bona fide* purchaser for value without knowledge of the fraud. *Baldwin v. Burt,* 43 Neb. 245; *Bowman v. Griffith,* 35 Neb. 361.

About a week before this action was begun, Waddell exchanged lots 7 and 8 in block 2, Koenigstein's Second addition to Norfolk, to William A. Crane for a ranch in Cherry county. The testimony of Crane is to the effect that at the time the exchange was made he owned a ranch of 960 acres of land in Cherry county, having lived there from 1891 to 1914; that in June, 1914, he was in Norfolk visiting a Mr. Fitch, a former neighbor of his, and there met Waddell; that he had told Fitch

he wanted to make a change on account of his wife's health, and after he went home Fitch wrote him about the Norfolk property, which he thought might be exchanged for the ranch; that on the 28th of July, 1914, Fitch, Waddell and C. E. Shaw (Waddell's brother-in-law) came to the ranch one morning, drove over it, went to the house for dinner, afterwards they made an offer to exchange, and he accepted it. They had photographs of the place in Norfolk with them, and he relied upon their description, also upon Mr. Fitch's word. He had never seen the property. He understood it was subject to $3,500 incumbrance. Crane and his wife went to Merriam, a nearby town, had a deed written at the bank, and acknowledged and delivered it at that time. He obtained a deed from Shaw to the Norfolk property at that time. The deed was dated July 6, and the name of the grantee was in blank and was filled in at that time. Mr. Blanchard, cashier of the bank, sent it for record at his request. Crance testifies: "They told me the title to the Norfolk property was absolutely good or the Building and Loan Association would not accept it. I trusted it was all right and relied upon Mr. Fitch's description, and the reason of the Building and Loan Association accepting the title. I knew it was good or they would not accept it." He paid Fitch a commission of $100. He had no notice or knowledge that Mrs. Justice had any interest in the Norfolk property. Crane's testimony was corroborated by that of his wife, Fitch, and the cashier of the bank.

This property consisted of two lots with three houses upon them. Mrs. Justice lived in a house on one corner of the lots. Waddell testified that he took possesion of this property on July 1, that he rented the corner house to her for $20 a month, that she wanted screens put on, and electric light fixtures. The other two houses also required work to be done upon them, and he paid out over $200 for screens, electric lights, paint and papering. He rented the other two houses and re-

tained possession of the premises until he sold them to Crane on July 28.

On July 25, Mrs. Justice wrote to an agent at Denver, asking him to collect the rent upon the hotel property, and on the 28th of July he wrote her saying he would look after the property. On July 31, this agent in a letter gave Mrs. Justice information which clearly indicated she had been deceived.

Another witness testifies that he heard Mrs. Justice and Waddell arrange that she should pay $20 a month rent. Shaw testifies that after the first of August he collected the rent and turned it over to Crane.

Did the fact that Mrs. Justice remained in possession of the corner house give constructive notice to Crane that she claimed to own the property? At the time Crane received the title, Mrs. Justice was in possession as a tenant of Waddell's, and at that time she had no notice or knowledge that she had been defrauded. Her occupancy was notice of the right which she then claimed, which was merely that of a tenant. If Crane had inquired of Mrs. Justice at that time by what right she held possession, she would have so ininformed him, because she was still claiming to be the owner of the Denver property, and attempting to collect rent for the same. Under these circumstances Crane was an innocent purchaser, unless the statute as to *lis pendens* affects his status.

Was Christopher an innocent purchaser? He testifies that he lived in Cherry county for ten years; that he knew one Baumann, and met him and Waddell in Valentine in June, 1914; that he is a ranchman, and had a large number of horses, which he was disposing of as rapidly as possible. He told Baumann this, and Baumann suggested the trade with Waddell. Waddell represented it to be a good farm, and said the title was in Shaw. He further testified that Mrs. Justice was not mentioned, and he never heard of her; that they

went to the ranch and Waddell looked over about 30 head of horses, which were in a corral. He said he would take $90 an acre for the land, and would take 100 horses; that he, Christopher, had borrowed money from the bank to pay for the horses when he bought them, and when he sold them to Waddell he had the deed made to Mr. Nicholson, the cashier of the bank, as security. This testimony is corroborated by Baumann and other witnesses.

The land was taken subject to a mortgage of $2,175. $925 was paid in cash, and he received 97 head of horses. After Christopher paid his indebtedness to the bank, the land was reconveyed by the cashier to Christopher. Christopher received an abstract of title to the land on August 4, 1914.

The deed to Nicholson was executed on July 6, 1914, before Mrs. Justice knew she had been defrauded. There was no one in possession of the land. Under these facts, we believe that Christopher was an innocent purchaser, unless his status is affected by the *lis pendens* law.

With respect to the property conveyed to Sattler, Sattler is dead, and the testimony in his behalf is given by Waddell, who was the principal actor in the fraud. Waddell testified that he did not tell Sattler about the details of the trade. He told him he was expecting to get the barns Sattler was using, and wanted to sell him the property if he got it. He says that he and Sattler sometimes dealt in property together, Sattler furnishing the money, and they dividing the profits; that Sattler agreed to buy the barns before he went to Denver; that he knew Waddell was getting them from Mrs. Justice. Sattler was paying $1,200 a year rent for the barns in monthly payments. He paid $1,863 for the equity, the mortgage was $4,800. A page of the bank ledger introduced in evidence shows that in March, 1914, when Waddell's account was over-

drawn nearly $600, a deposit of $2,000 was made by Sattler. It is possible that Sattler was an innocent purchaser, but we are of the opinion that his estate has not sustained the burden of proof as to this.

The majority of the court take the view that the *lis pendens* statute, section 7651, Rev. St. 1913, does not operate to render Crane and Christopher purchasers *pendente lite* with notice of plaintiff's claim. The finding and judgment of the district court is affirmed in so far as it adjudicates that the property of Mrs. Justice involved in this action was procured by fraud, but is otherwise reversed, and the cause remanded with instructions to try the same *de novo,* if plaintiff desires, as to the *bona fides* of defendants Crane, Christopher and Sattler, and to determine the liability of Waddell and Shaw, or either of them, to plaintiff for damages; with leave to the parties to amend their pleadings, if so advised, and to introduce further evidence.

JUDGMENT ACCORDINGLY.

SEDGWICK, J., concurring.

It is suggested in appellee's brief that the defendants Christopher and Crane must be regarded as "subsequent purchasers with constructive notice of the pendency of this suit." It is conceded that they purchased the property and received their deeds before this action was begun, but the suggestion seems to be that, under the provisions of section 7651, Rev. St. 1913, the filing of the *lis pendens* in this action before their deeds were recorded makes them subsequent purchasers. The language of this section is: "Every person whose conveyance or incumbrance is subsequently executed or subsequently recorded, shall be deemed to be a subsequent purchaser or incumbrancer." This language makes them subsequent incumbrancers, and, although it is not a part of the law of conveyancing, and is dealing with notice, and not with the validity and effect of deeds, it would perhaps be difficult of construction

if it was not immediately followed by the qualifying clause that states plainly in what sense and to what extent they shall be treated as subsequent purchasers or incumbrancers, and "shall be bound by all proceedings taken in said action after the filing of such notice to the same extent as if he were made a party to the action." This seems to be decisive of the purpose of the lawmakers. If a person, holding an unrecorded deed as an innocent purchaser, is "made a party to the action," he must answer and show his interest, or default will be entered against him, and all of his claims in the property will be barred by the "proceedings taken in said action," resulting in final judgment.

This state seems to have adopted the statute from New York, as many other Code states did. In an early case in New York, the statute is construed, and it is said in the syllabus, "The provision of the Code (sec. 132), providing for the filing of *lis pendens,* making it constructive notice to a purchaser, and declaring that a purchaser whose conveyance is subsequently executed or recorded shall be a subsequent purchaser and shall be bound by the proceedings, simply affects such purchaser 'to the same extent as if he were made a party' to the action." The opinion discusses at length very interestingly the theory of *lis pendens,* and says: "The words 'to the same extent as if he were a party to the action' cannot be omitted in construction. * * * While it (the statute) also applies to cases of rights superior to those of the plaintiff, it only affects them in such a way as they would be influenced if the owners were parties to the action." *Lamont v. Cheshire,* 65 N. Y. 30. This case plainly construes the statute to mean that the plaintiff may file a notice of *lis pendens,* and persons holding unrecorded conveyances not known to plaintiff will have the same rights if the notice is filed before their papers are recorded

as though no notice was filed, and they were made parties to the action. The expression in the statute that they shall be deemed to be subsequent purchasers is not defined in the statute in any way, except by the expression which tells what the effect shall finally be, that is, they shall be bound the same as though they had been made parties to the action. This construction is followed in many New York cases and cases in various Code states which have adopted the New York statute. *Lamont v. Cheshire, supra; Bateman v. Backus,* 4 Dak. 433; *Hathaway v. Arnold,* 157 Wis. 22.

This court has heretofore so construed the statute. In an early case construing the act of 1887, which is now our section 7651, Rev. St. 1913, that part of the statute which we are now considering was held unconstitutional. *Sheasley v. Keens,* 48 Neb. 57. But in a later case the question was discussed at large, and *Sheasley v. Keens, supra,* was overruled. In *Munger v. Beard & Bro.,* 79 Neb. 764, it was said: "The thought of the legislature in providing for a notice to be filed with the register of deeds undoubtedly was to protect the interest of secret owners or lien-holders so far as might be done without prejudice to the plaintiff, and to allow them to come into court and have their rights adjudicated." The majority of the court consider this the proper construction of the statute, and, as these defendants have availed themselves of the right to come into court and have their rights adjudicated, they must be adjudicated in this action.

Rose, J., not sitting.