TERRY BROS. & MEVES, A PARTNERSHIP, APPELLEE, V. NATIONAL AUTO INSURANCE COMPANY, A CORPORATION, APPELLEE, GIBREAL AUTO SALES, INC., A CORPORATION, INTERVENER-APPELLANT.

69 N. W. 2d 361

Filed March 18, 1955. No. 33644.

*Floersch & Floersch,* for appellant.

*Walter P. Lauritsen* and *Hyman Polsky,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action in replevin brought by Terry Bros. & Meves, a partnership, as plaintiff, against the National Auto Insurance Company, a corporation, as defendant, to secure possession of a 1948 Mercury convertible coupé. Gibreal Auto Sales, Inc., a corporation, by leave of court, was granted a right to intervene and filed a petition in intervention claiming the ownership of said automobile. A jury was impaneled and the cause proceeded to trial. During the progress thereof, by agreement of the parties, the jury was dismissed and the cause proceeded to trial before the trial judge. The trial judge rendered judgment in favor of the plaintiff and against the defendant and the intervener, finding that the plaintiff was the owner of the automobile in question and entitled to possession of it. The trial judge rendered judgment in favor of the plaintiff and against the defendant for damages in the amount of one dollar for illegal detention of the automobile, and costs of the action. The intervener filed a motion for new trial which was overruled. From this order, the intervener appealed.

The plaintiff filed a petition in which it alleged in substance that it was a partnership; that it was the owner of and entitled to the immediate possession of a 1948 Mercury convertible coupé; and prayed judgment against the defendant for the return of the automobile or the value of the same if not returned, and for dam-

ages and costs. The plaintiff also filed an affidavit of replevin in due form. Possession of the automobile was delivered to the plaintiff and a replevin bond was filed by the plaintiff after an appraisal of the automobile was made in the amount of $925.

The defendant's answer to the plaintiff's petition was a general denial of the allegations contained therein.

By leave of court, the intervener filed a petition in which it claimed that it was the owner of the automobile in question and entitled to the possession of the same or its value in the event the same was not returned. This petition detailed certain facts and alleged the same constituted a fraud perpetrated on it by Bethke, the purchaser of the automobile from the intervener.

The answer of the plaintiff to the intervener's petition was in effect a general denial of a fraud as pleaded therein, and an affirmative allegation that the fraud or false representations made by the intervener's vendee were made possible by the actions of the intervener, and further denied generally the allegations contained in the intervener's petition.

The reply of the intervener to the answer of the plaintiff was in the form of a general denial.

The record discloses that on January 4, 1950, Gilbert Gibreal, president of the intervener corporation and hereafter referred to as Gibreal, through the intervener sold a 1948 Mercury convertible coupé to Roy Bethke under a conditional sales contract for $1,150, the purchaser to pay $50 down, which he failed to do. The possession of the car was turned over to Bethke, but the title to it was not given to him. On January 24, 1950, Bethke told Gibreal that he was stopped by a policeman for not having proper license plates and the car was impounded. He requested the certificate of title to enable him to buy his license and get the car from the police station because he was required to have a license before it would be surrendered to him. Gibreal transferred the certificate of title to Bethke. Bethke called

Gibreal from the courthouse and informed him that he had to pay last year's taxes on the car before he could obtain the certificate of title and needed $35 for that purpose. Gibreal did not advance this money, but asked Bethke if he had the certificate of title, which he had. Gibreal then asked Bethke to return the title immediately. He did not do so. Gibreal looked for Bethke, and the next morning found him and Orville Bilyeu and two other men walking toward the police station with license plates. Gibreal asked for the title to the car. Bethke said it was at home, and Gibreal told him it would be impossible to get the car unless he had the title. Gibreal said he wanted it right away. Bethke and Bilyeu left to get the title and said they would return in half an hour, but they failed to do so. Gibreal went to the police station and informed the police what happened and was permitted to take possession of the car. Bethke called Gibreal by telephone and told him he would have the title, that he had borrowed the money to pay the taxes from Orville Bilyeu, and would have to pay back the money before he could get the title. He did not advise Gibreal that he had transferred the title to Bilyeu. Gibreal further testified that he did not learn of this fact until he saw a photostatic copy of the certificate of title later. It appears that Gibreal was informed that Bethke owed Bilyeu a gambling debt and Bilyeu refused to surrender the title to the car. Gibreal sold the car to Larry Slayman on February 20, 1950, advising Slayman that he was having difficulty with the certificate of title. The car was sold under a conditional sales contract which in turn was sold by Gibreal to the Live Stock National Bank. Fire, theft, and collision insurance was written for Slayman on this car by the defendant. Gibreal did not start any court action against either Bethke or Bilyeu to secure the return of the title to the car.

Larry Slayman testified that he took possession of the Mercury automobile on February 20, 1950. The

license plates were not transferred. He placed license plates from another car on the Mercury. On March 13, 1950, the Mercury was in his possession. He drove the car home and into the garage. He locked the car and closed the garage doors. The next morning the garage was open and the car was missing. He called the police department, the defendant, and the intervener. Later he made a claim for insurance and was advised there would be a waiting period of 30 days to permit the insurance carrier to endeavor to find the car. He settled his difficulties with the intervener by taking another car in place of the Mercury and transferring whatever interest he had in the Mercury to the intervener.

Irvin Meves, a partner of Terry Bros. & Meves, testified that the partnership is located in Grand Island and engaged in the business of buying and selling cars. On March 13, 1950, Roy Bethke and Orville Bilyeu came to the plaintiff's place of business about 9 a. m., with a 1948 Mercury convertible which they wanted to sell. After looking at the car, the plaintiff offered $750 for it, which offer was accepted. A check was given to Bilyeu for the purchase price, and the plaintiff received a Nebraska certificate of title by an assignment by Bilyeu to it. The title was acquired by Roy Bethke January 25, 1950, from the Gibreal Auto Sales, Inc. The Mercury car had Douglas County license plates on it, which Bilyeu and Bethke took with them. On March 20, 1950, this car was sold to Edward and/or Jerry L. Guzinski and title to the car obtained by them. It was sold to the father for the use of the son who was under age.

It appears that the insurance carrier that issued the policy to Slayman contacted Guzinski who had possession of the Mercury, obtained permission to take it, and drove it back to Lincoln on May 3, 1950. The plaintiff contacted the defendant with reference to the Mercury to obtain possession of it, which was refused. After possession of the Mercury was taken by the in-

surance carrier, Guzinski contacted the plaintiff and a deal was made whereby Guzinski assigned the title to the Mercury to the plaintiff who started an action to replevin the car from the defendant on May 17, 1950.

On cross-examination Meves testified that Bethke originally lived in Grand Island and was a mechanic. The plaintiff had sold him a car on one occasion, and that was all the plaintiff knew about him. Bethke's father, who was employed in Grand Island, bought several cars from the plaintiff.

There is no dispute between the parties or conflict in the evidence relative to the chain of title. It appears from the record that the intervener had owned the Mercury previously, and had re-acquired title from one Kennelly for $1,000 in December 1949. Kennelly's assigned title was reassigned by the intervener to Bethke on January 24, 1950, and on the next day Bethke secured a Nebraska title in his name. The same day Bethke assigned his title to Bilyeu, and on January 26, 1950, Bilyeu secured a new title in his name. When the car was purchased by the plaintiff, Bilyeu assigned the title to the plaintiff, and upon sale by the plaintiff, title was reassigned to Edward and/or Jerry L. Guzinski, who secured a new title. After the defendant insurance company seized the car as an allegedly stolen car, the Guzinski title was assigned to the plaintiff, and the plaintiff became the owner of and in possession of title when this action was started.

It also appears from the evidence that the intervener sold the Mercury car to Slayman under a conditional sales contract and delivered possession of it to him after the intervener had turned over the title to this car to Bethke and after Bethke had transferred the title of the same to Bilyeu.

The intervener, hereinafter referred to as the appellant, assigns error on the part of the trial court in the following respects: (1) That the judgment rendered by the trial court is contrary to the evidence and the

law; (2) that the trial court erred in failing to find the certificate of title to the Mercury automobile was secured by a criminal act; (3) that the trial court erred in finding that the plaintiff, hereinafter referred to as the appellee, received title to the Mercury automobile as an innocent purchaser for value; and (4) that the trial court erred in finding in effect that the appellant intended to transfer the title to the Mercury automobile to Roy Bethke for any other purpose than to enable him to secure license plates for it.

The appellant cites Snyder v. Lincoln, 150 Neb. 580, 35 N. W. 2d 483, and Snyder v. Lincoln, 153 Neb. 611, 45 N. W. 2d 749. In the former case, it is said: "Where the owner of personal property is induced by fraud to part with its possession without intending also to part with the title, the transaction is larceny if the person so receiving the possession without the title has at the time a secret intention of converting it permanently to his own use and does so without the consent of the owner. * * * It was the larceny, and not a sale by or any negligent act of plaintiff, which was the proximate and effective cause of injury to the parties. The general rule is 'where one of two innocent persons must suffer by the acts of a third, he whose conduct, act, or omission enables such third person to occasion the loss must sustain it if the other party acted in good faith, without knowledge of the facts, and altered his position to his detriment.' 31 C. J. S., Estoppel, § 103, p. 325. However, the foregoing 'rule does not apply in cases where the wrong was accomplished through the instrumentality of a criminal act, it being held that in such cases the crime, and not the negligent act, is the proximate cause of the injury.' 31 C. J. S., Estoppel, § 103, p. 330. See, also, 21 C. J., Estoppel, § 176, p. 1172; Schumann v. Bank of California, N. A., 114 Or. 336, 233 P. 860, 37 A. L. R. 1531."

The appellant contends that in the light of the above-cited authorities and under the facts in the instant case

the certificate of title to the automobile was secured from the appellant for a single purpose, that is, to secure license plates for the automobile; that there was no intention on the part of the appellant to give the certificate of title to Bethke; that the action of Bethke indicates that he had the intention of converting it to his own use without the consent of the appellant; and that Bethke thereby committed the crime of larceny.

The appellant also contends that the following is applicable: It is generally held that before the owner will be estopped to claim his property from an innocent purchaser for value, the owner must have voluntarily placed the third person in possession of both the indicia of title and the possession of the property. Reference is made to Snyder v. Lincoln, 156 Neb. 190, 55 N. W. 2d 614, wherein we said: "In Loyal's Auto Exchange, Inc. v. Munch, supra (153 Neb. 628, 45 N. W. 2d 913), we said, in effect, that a purchaser who receives possession of an automobile without obtaining a certificate of title thereto, in accordance with the statute, acquires no title or ownership therein. We did not say that the possession of a certificate of title was an absolute muniment of title. A thief with a certificate of title to a stolen automobile does not divest the owner of his right to take it wherever he can find it. A certificate of title is essential to convey the title to an automobile, but it is not conclusive of ownership. It is simply the exclusive method provided by statute for the transfer of title to a motor vehicle. It conveys no greater interest than the grantor actually possesses."

In the case at bar the facts and circumstances are such that the above-cited authorities are not applicable in the manner contended for by the appellant as will appear later in the opinion.

Section 60-105, R. R. S. 1943, provides in part: "No court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any motor vehicle, * * * sold or disposed of, or mortgaged

or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this act."

The possession by Bilyeu of a Nebraska certificate of title was evidence of ownership of the automobile. The certificate was in his name and conclusive of his ownership under the circumstances of the instant case, and appellee was justified, under the circumstances, in treating him as the owner thereof. See, Garbark v. Newman, 155 Neb. 188, 51 N. W. 2d 315; Loyal's Auto Exchange, Inc. v. Munch, 153 Neb. 628, 45 N. W. 2d 913; State Farm Mutual Auto Ins. Co. v. Drawbaugh, 159 Neb. 149, 65 N. W. 2d 542.

In the light of the facts as shown by the record, the following is applicable: When personal property is obtained from its owner by a sale induced by the fraud of the buyer, and as a result thereof title passes to the party guilty of the fraud, an innocent purchaser of the property from the fraudulent buyer or from one to whom he has surrendered it, for value and without knowledge of the fraud, takes the title thereto free from the equity of the original seller to rescind the sale and reclaim the property. In other words, if after seller delivers possession to the buyer pursuant to a sale induced by the buyer's fraud the property has passed into the hands of a bona fide purchaser for value, the right of the original seller to recover the property is lost. See, Snyder v. Lincoln, 153 Neb. 611, 45 N. W. 2d 749; Snyder v. Lincoln, 150 Neb. 580, 35 N. W. 2d 483; Uniform Sales Act, § 69-424, R. R. S. 1943; 46 Am. Jur., Sales, § 471, p. 635.

An innocent purchaser is one who buys property for a present valuable consideration without knowledge sufficient to charge him in law with notice of any infirmity in the title of the seller. See, Wallich v. Sandlovich, 111 Neb. 318, 196 N. W. 317; Justice v. Shaw, 103 Neb. 423, 172 N. W. 253; Annotation, 107 A. L. R. 502; 46 Am. Jur., Sales, § 465, p. 630. See, also, Mingus v.

Bell, 148 Neb. 735, 29 N. W. 2d 332; Snyder v. Lincoln, 153 Neb. 611, 45 N. W. 2d 749.

The appellee was not in a position to know or have knowledge of an alleged fraud, nor was the appellee in a position to know or have knowledge that any person claimed ownership or a lien on the automobile for the reason that the certificate of title disclosed the seller to be the owner of the automobile. The certificate showed that Bilyeu acquired the title from Bethke who was present at the time the appellee purchased the automobile.

While the appellant claims the purchase price of the automobile was not for value, the evidence clearly discloses that it was. It appears that on December 12, 1949, 3 months prior to the acquisition of title to the automobile by the appellee, the appellant purchased this automobile for $1,000. While some contention is made that the appellee did not consult the N.A.D.A. book, alleged to govern prices of used automobiles and the value of the same, from the record it is apparent that the appellee gave a sufficient amount for the automobile in keeping with its business and for resale value.

It is a general rule that where one of two innocent persons must suffer by the acts of a third, he whose conduct, acts or omissions enables the third person to occasion loss must sustain it if the other party acted in good faith, without knowledge of the facts, and altered his position to his detriment. This rule has heretofore been cited in connection with the appellant's contention as to its inapplicability to the facts in the instant case. However, we deem it applicable when applied to the appellee's contention.

In a law action findings of fact made by the court have the same force and effect as the verdict of a jury, and if there is competent evidence to support them, such findings will not be disturbed on appeal. See, Faught v. Dawson County Irr. Co., 146 Neb. 274, 19 N. W. 2d

358; Linch v. Thorpe, 140 Neb. 478, 300 N. W. 383; Moore v. Schank, 148 Neb. 228, 27 N. W. 2d 165.

For the reasons given herein, the judgment of the trial court is hereby affirmed.

AFFIRMED.