UNIVERSAL C. I. T. CREDIT CORPORATION, A CORPORATION, APPELLEE, V. HANS VOGT, APPELLANT.

86 N. W. 2d 771

Filed December 13, 1957. No. 34266.

612

*O'Hanlon & O'Hanlon,* for appellant.

*Mecham, Stoehr, Rickerson & Sodoro,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Universal C. I. T. Credit Corporation, brought this action on October 1, 1956, in the district court for Washington County to replevin a 1956 Mercury Tudor Hardtop Monterey automobile from defendant, Hans Vogt. Plaintiff claimed the right of property in and possession of the car as a vendor by assignment for value of a conditional sales contract duly executed, filed, and recorded in Oklahoma where the transaction was consummated, with the lien thereof noted on the certificate of title issued in Oklahoma to the vendee, Johann Leuritsen, who there obtained a registration certificate with the

title number and numbered license plates designated thereon, and defendant had constructive and actual notice of plaintiff's rights. Defendant, a judgment creditor of Johann Leuritsen, claimed the right of property in and possession of the car as a bona fide purchaser thereof at an execution sale by the sheriff of Washington County, Nebraska, on October 1, 1956, and the issuance of a Nebraska certificate of title to defendant on that date, free of all liens.

A jury was waived, and upon trial to the court it rendered judgment, finding and adjudging that plaintiff had the right of property in and possession of the car which had in appropriate proceedings been duly returned to plaintiff. It also awarded plaintiff one cent damages, and costs. Defendant's motion for new trial was overruled and he appealed, assigning that the judgment was contrary to the evidence and the law. We do not sustain the assignment. In that connection, it is elementary that such findings have the effect of the verdict of a jury, and judgment thereon will not be disturbed unless clearly wrong. Scottsbluff Nat. Bank v. First State Bank, 162 Neb. 475, 76 N. W. 2d 445.

The evidence was either stipulated or without dispute. On May 7, 1956, Leuritsen purchased the car as new from a dealer, Roy Jackson Motor Co. of Antlers, Oklahoma, on a duly executed, valid conditional sales contract, which was thereupon assigned to plaintiff for a valuable consideration by the dealer. A duly certified copy of the original conditional sales contract, which had been filed and recorded on May 10, 1956, in the office of the county clerk of Choctaw County, Oklahoma, where Leuritsen then allegedly resided and the transaction was consummated, was received in evidence. It described the car by make, year, model, and motor number. It designated the vendee or purchaser as "Johann Leuritsen Gen. Del. Hugo, Okla.," and the seller as "Roy Jackson Motor Co. Antlers, Okla." It recited that there had been a "Cash Down Payment" of "$750.00 * * *

leaving a time balance of $2709.60," which Leuritsen "promises to pay at the office of" plaintiff's Shawnee, Oklahoma, branch "in 30 successive monthly instalments, each in the amount of $90.32 * * * All payable the same date of each month * * * The first instalment becomes due * * * June 15, 1956 * * * Title to the car is retained by" plaintiff "until such balance is fully paid * * *." Leuritsen agreed "to keep the car free from liens" and that upon default of payments aforesaid or other conditions unimportant here, plaintiff could repossess the car as owner and retain all payments as compensation for use of the car while in Leuritsen's possession. The installments for June, July, and August, totalling $270.96, were paid by Leuritsen to plaintiff's Shawnee, Oklahoma, branch office, but he failed to pay the installment due September 15, 1956.

On May 7, 1956, when Leuritsen purchased the car, he "made an application in writing showing that he was a resident of Hugo, Oklahoma and had lived there for six months; * * *." His "Application for Oklahoma Certificate of Title" to the car, duly signed, acknowledged, and filed by him on May 7, 1956, again correctly described the car and recited that his address was "City Hugo, Okla. County Choctaw" and that "This motor vehicle is subject to a lien: Amount $2709.60 in favor of Roy Jackson Motor Co. Address Antlers, Okla.," the seller, who was a dealer. It also recited "Title No. E868448 Motor No. 56SL 93517M."

Leuritsen's "State of Oklahoma Certificate of Title of Vehicle," duly issued and filed on May 7, 1956, as "Original Title No. E868448," again correctly described the car, with "Tag Number * * * 1956 58 1597." It recited that the certificate of title was "Issued to Johann Leuritsen * * * Hugo * * * Oklahoma" and certified "that according to the Records of the Oklahoma Tax Commission," he was "the owner of the vehicle described in the margin hereof and that the said vehicle is subject to a Lien lien in favor of Roy Jackson Motor Co. Address

Antlers, Okla in the amount of $2709.60 Dated 5-7-56."

Leuritsen's "Application for Automobile Registration State of Oklahoma Official Registration Certificate" duly subscribed, sworn to, and filed May 7, 1956, recited "Name of Present Owner Johann Leuritsen * * * P/O. (Home Address) Hugo * * * State Okla * * * If new, date purchased 5-7-56." It again correctly described the car and noted thereon "Original Title No. E868448" with "1956 License No. 58-1597."

Thereupon and thereafter, Oklahoma license plates bearing that license number and the registration certificate aforesaid were conspicuously placed upon and in the car. However, some time subsequently, Leuritsen came to Nebraska with the car, and during the period from July 15, 1956, to and beyond October 1, 1956, he lived and worked part-time in Omaha but visited his wife and children who lived in Kennard, Washington County, Nebraska, where some of his children attended school during 1956. While in Omaha, Leuritsen applied for and obtained a wheel tax tag which was fastened to his Oklahoma license plates. Some time after his return to Nebraska, plaintiff's Oklahoma branch office, upon learning that Leuritsen was somewhere in the Omaha area, sent its Omaha office an action request for collection of installments on the car. However, plaintiff looked for Leuritsen there without success, and he actually remitted his July and August installments directly to plaintiff's Shawnee, Oklahoma, branch office. The installment due September 15, 1956, was in default on that date and was never paid.

On April 12, 1955, defendant purportedly obtained a default judgment in the district court for Washington County against Leuritsen and Gladys, his wife, respectively named therein as Johann L. Lauritsen and Gladys V. Lauritsen, for $3,210. In doing so, defendant obtained personal service upon Gladys Lauritsen, and upon Johann Lauritsen by leaving a copy of the summons at his usual place of residence in Kennard, Washington

County. A writ of execution thereon issued September 5, 1956, and on September 13, 1956, the sheriff of Washington County, Nebraska, levied same upon the car involved at Kennard in Washington County. The car was thereafter purchased by defendant at the sheriff's sale on October 1, 1956. On that date defendant also obtained a Nebraska certificate of title without noting any liens thereon, and obtained a Nebraska registration certificate. At the time of levy and sale upon execution, the car had upon it the 1956 Oklahoma license plates, No. 58-1597, and had in it the Oklahoma registration certificate referring to the Oklahoma "Original Title No. E868448" which, as heretofore observed, recited that the car was subject to a lien for $2,709.60. Further, it was stipulated that after the levy and prior to the sheriff's sale, defendant and his attorney both "had actual notice of a claim by the plaintiff by reason of a conditional sales contract" which was in default on September 15, 1956, and that immediately after the sale October 1, 1956, "the plaintiff, through its attorney, made a demand upon the defendant, through his attorney, for recognition of the plaintiff's rights under its conditional sales contract but the defendant then and there took the position that the plaintiff had no right, title or interest in" the automobile, and thereupon this action was filed.

The Washington County personal property tax records for the village of Kennard show that from 1950 to 1954, inclusive, joint returns were made and signed by Johann Leuritsen for himself and wife. Therein he claimed resident exemption from payment of poll tax as a volunteer fireman. However, the 1955 tax return was made and signed by Gladys Leuritsen without mentioning her husband. Also, the 1956 return was made and signed by her, but therein she claimed resident exemption from payment of poll tax by her husband as a volunteer fireman. In that connection, defendant adduced evidence that Johann Leuritsen "has done trucking and been

in other business. He has had places scattered all over the country."

In the light of the evidence heretofore recited, we are confronted with the question of whether or not the doctrine of comity is applicable and controlling. We conclude that it is. In Green Finance Co. v. Becker, 151 Neb. 479, 37 N. W. 2d 794, this court held: "Comity is neither a matter of absolute obligation or mere courtesy or good will, but is the doctrine under which contracts made, rights acquired, and obligations incurred in one state are enforced by the courts of another state unless there is some definite public policy preventing recognition of such right or title."

As stated in 11 Am. Jur., Conflict of Laws, § 77, p. 362, citing authorities: "Ordinarily, the validity and effect of a conditional sale, as regards both the parties and third persons, are governed by the law of the state in which the contract was made and the property was then situated." Also, as stated in § 78, p. 363, citing authorities: "Apart from failure to comply with the local statutes in regard to filing or recording conditional sales contracts, it is not generally regarded as contrary to public policy to enforce the title reserved by the vendor in a conditional sales contract, valid by the law of another state in which the contract was made and the property was then located, as against purchasers in good faith from, or creditors of, the vendee, whose rights attached after the property had been removed to the state of the forum." Further, as stated in the 1957 Cumulative Supplement thereto, at page 55, citing Annotation, 13 A. L. R. 2d 1326, and other authorities: "A number of recent cases have considered whether or not the issuance of a statutory certificate of title to a motor vehicle has any effect upon the general rule that a conditional sale contract properly executed and recorded under the laws of the state where the contract was made and the property was then located has priority over the rights of third persons acquired in another state

after removal of the property thereto. No clear-cut rules with respect to this question can be said to have crystallized, but in a majority of the decisions the rights of the original lienholder have been protected."

Turning to Annotation, 13 A. L. R. 2d 1326, we find the same statement supported by authorities, some of which conclude that compliance with the certificate of title and registration act under the laws of the state where the contract was made and the motor vehicle was then located, by notation of the lien of a chattel mortgage or conditional sales contract on the certificate of title, generally gives such lien priority over the rights of third persons acquired in another state after removal of the property thereto. See, also, Annotation, 13 A. L. R. 2d 1353.

In Kinney Loan & Finance Co. v. Sumner, 159 Neb. 57, 65 N. W. 2d 240, this court held: "Ordinarily, foreign law or valid rights based thereon will be given effect or enforced under the doctrine of comity unless opposed to the settled public policy of the forum." Therein, we also concluded that bona fide contracts such as that at bar, which are valid and enforceable in the state where made and to be performed, do not offend the public policy of this forum. The conclusion is applicable here in the absence of any statute or holding requiring the application of a contrary rule.

As said in Restatement, Conflict of Laws, § 272, p. 359: "Whether a conditional sale is effective to enable the vendor to retain title is determined by the law of the state where the chattel is at the time of the sale." Also, as stated in § 273, p. 360: "If, after a valid conditional sale, the chattel is taken into another state, the vendor's title to the chattel will be recognized in the second state."

In Securities Credit Corp. v. Pindell, 153 Neb. 298, 44 N. W. 2d 501, this court held: "The Certificate of Title Act was enacted for the protection of owners of

motor vehicles, those holding liens thereon, and the public.

"The Certificate of Title Act eliminates the practice of filing and recording chattel mortgages on motor vehicles in the chattel mortgage records, and substitutes the recording of such upon the certificate of title itself.

"One holding a lien upon a motor vehicle must, insofar as he can reasonably do so, protect himself and others thereafter dealing in good faith, by complying and requiring compliance with applicable laws concerning certificates of title to motor vehicles."

In connection with the last rule aforesaid, defendant argued that when plaintiff consented to removal of the car to Nebraska, or knew that Leuritsen was in the Omaha area and did look for him there, it had the duty to protect its priority by filing its conditional sales contract in Nebraska or by obtaining a certificate of title to the car for Leuritsen in Nebraska with its lien noted thereon. Defendant's contention has no merit. In that regard, there is no evidence which would sustain a conclusion that plaintiff consented to removal of the car to Nebraska, but whether or not it did is of little importance under the circumstances presented here, because plaintiff and its assignor performed their duty by recording their contract and noting the lien thereof on the certificate of title with the title issued and filed in conformity with the laws of Oklahoma.

As concluded in Securities Credit Corp. v. Pindell, *supra*, section 60-110, R. R. S. 1943, of the certificate of title act, has eliminated the practice of filing and recording chattel mortgages and conditional sales contracts on motor vehicles, under sections 36-207, 36-208, 36-301, 36-302, and 36-303, R. R. S. 1943, but instead requires notation of the lien thereof upon the certificate of title. Therefore, plaintiff's contract could not have been filed and recorded as such anywhere in Nebraska in order to give it priority. However, it was lawfully filed and recorded in Oklahoma, and plaintiff's lien was also so noted

on Leuritsen's certificate of title obtained by him through the dealer, plaintiff's assignor, which was the key to the whole situation.

In that connection, section 60-106, R. S. Supp., 1955, provides in part: "(1) Application for a certificate of title shall be made upon a form prescribed by section 60-114, and shall be sworn to before a notary public or other officer empowered to administer oaths. (2) Such application shall be filed with the county clerk of the county in which the applicant resides, if the applicant is a resident of this state or, if a nonresident, in the county in which the transaction is consummated, * * *. (3) * * * If a certificate of title has not previously been issued for such motor vehicle in this state, such application, unless otherwise provided for in this act, shall be accompanied by * * * a certificate of title * * *. * * * (5) In the case of the sale of a motor vehicle by a dealer to a general purchaser or user, the certificate of title shall be obtained in the name of the purchaser by the dealer upon application signed by the purchaser, and in all other cases such certificates shall be obtained by the purchasers."

Since the car involved was titled in Oklahoma with plaintiff's lien noted thereon, its conditional sales contract could not have been filed and recorded in Nebraska until and unless a Nebraska certificate of title thereto had been obtained by Leuritsen, the purchaser, upon which plaintiff's lien could be noted. It appears then that plaintiff had no right or duty to obtain a Nebraska certificate of title for Leuritsen after learning that he was somewhere in the Omaha area and plaintiff looked for him without success. Of course, if plaintiff could have obtained a certificate of title for Leuritsen in Nebraska, or if Leuritsen himself had done so, the lien of plaintiff would of necessity have been noted thereon and defendant, as a judgment creditor, would have neither gained nor lost anything thereby.

Defendant also argued that Leuritsen never was a

resident of Oklahoma but always was a resident of Nebraska, and that plaintiff and its assignor were negligent in failing to discover that fact and lost priority of its lien when Leuritsen did not obtain a Nebraska certificate of title noting its lien thereon. The contention has no merit. In that connection, the record discloses that four times in writing, two of them under oath, Leuritsen represented to the dealer, to plaintiff, and to Oklahoma officials that he was a resident of Hugo, Oklahoma, when and where the transaction was consummated. As against plaintiff, Leuritsen would be estopped to claim otherwise, and defendant, as a judgment creditor at judicial sale, could acquire no greater right or interest than Leuritsen had, which was the certificate of title with plaintiff's lien noted thereon.

Concededly, Leuritsen had done trucking and had been in other business in places scattered all over the country. The mere fact that his wife and children then lived in Kennard and he visited them there at times did not make him a resident thereof when the transaction was consummated. Residence of a party in a community is determined by the intention of such party, and Leuritsen was not prevented from having a residence separate and apart from his family. Wray v. Wray, 149 Neb. 376, 31 N. W. 2d 228. Under the circumstances presented here, plaintiff had a right to assume that Leuritsen had a personal residence in Hugo, Oklahoma, at the time the transaction was consummated, and there is evidence to support the conclusion that he was such a resident. Sheffield v. Walker, 231 N. C. 556, 58 S. E. 2d 356.

In that connection, section 60-305, R. R. S. 1943, provides in part: "The provisions of law relative to registration and the display of registration numbers shall not to be construed to apply to any motor vehicle owned by a nonresident of this state * * * if the owner thereof shall have complied with the provisions of the law of the state of which he is a resident, relative to the

registration thereof and the display of registration number plates thereon, and shall conspicuously display his registration number plates as required by the law of this state."

In that regard also, section 60-305.01, R. R. S. 1943, provides: "A nonresident owner, except as otherwise provided in this section, owning any foreign vehicle which has been duly registered *for the current calendar year* in the state, country, or other place of which the owner is a resident, and which at all times, when operated in this state, has displayed upon it the number plate or plates issued for such vehicle in the place of residence of such owner, may operate or permit the operation of such vehicle within the state without registering such vehicle or paying any fees to this state." (Italics supplied.) Such section was amended by Laws 1957, c. 264, § 1, p. 978, effective September 20, 1957, to include an exception, but it has no application here. It thus appears that Leuritsen was not required to obtain a Nebraska title and get a registration certificate and license plates in Nebraska during 1956.

In North American Acceptance Corp. v. Meeks, 146 Neb. 546, 20 N. W. 2d 504, this court held, citing 2 Beale, The Conflict of Laws, § 272.2, p. 1001, § 273.1, p. 1003, and Restatement, Conflict of Laws, § 272, p. 359, and § 273, p. 360: "Whether a sale of a chattel conditioned on the retention of title by the vendor is legally effective to keep title in the vendor depends upon the law of the place where the chattel was at the time of the sale. So the requirements of acknowledgment and registration applicable are those of the state of situs of the chattel.

"If, after a valid conditional sale in another state, the chattel is taken into this state, the vendor's title to the chattel will be recognized in this state."

At the beginning of travel by automobile, the system of filing and recording chattel mortgages and conditional sales contracts was simple and generally effective.

However, as time progressed and the automobile became a giant commercial enterprise with transportation of automobiles by millions of purchasers and users for pleasure and business from county to county and from state to state, the certificate of title system with notation of liens thereon and registration upon presentation of such certificate has generally been adopted by most of the states in order more effectively to protect owners of motor vehicles, lienholders, and the public. That has been done so that in cases such as that at bar, wherein the certificate of title, registration, and license plate laws of another state have been complied with, the vendor of a conditional sales contract which retains title pending payment in full for the motor vehicle with the lien thereof noted on the certificate of title, will not have the burden and expense of keeping his eyes upon or following the movements of the vehicle in order to ascertain into what state or into what county in any such state or states the vehicle has been taken.

In that connection, also, this court has held that: "A creditor, by the levy of an execution, acquires no greater rights in the property levied upon, than the judgment debtor had at the time of the seizure." Thies v. Weible, 126 Neb. 720, 254 N. W. 420.

Herein Leuritsen had a certificate of title subject to the lien of plaintiff's conditional sales contract duly noted thereon, which retained title in the vendor pending payment in full for the car. That was the only lawful method by which plaintiff could have preserved priority of its lien under the circumstances presented in this case, and it must be assumed that defendant knew the provisions of our certificate of title and registration laws. Loyal's Auto Exchange, Inc. v. Munch, 153 Neb. 628, 45 N. W. 2d 913.

In that connection, we have also held that: "The doctrine of caveat emptor applies to all judicial sales in this state, subject to the qualification that the purchaser

is entitled to relief on the ground of after-discovered mistake of material facts or fraud, where he is free from negligence. He is bound to examine the title and not rely upon statements made by the officer conducting the sale as to its condition." Fisher v. Minor, 159 Neb. 247, 66 N. W. 2d 557.

As recently as Terry Bros. & Meves v. National Auto Ins. Co., 160 Neb. 110, 69 N. W. 2d 361, we held that: "A certificate of title of a motor vehicle is generally conclusive evidence in this state of the ownership of the vehicle.

"An innocent purchaser is one who buys property for a present valuable consideration without knowledge sufficient to charge him in law with notice of any infirmity in the title of the seller.

"The general rule is that where one of two innocent persons must suffer by the acts of a third, he whose conduct, act, or omission enabled such third person to occasion the loss must sustain it if the other party acted in good faith, without knowledge of the facts, and altered his position to his detriment."

In that connection, defendant claimed the benefit of the last rule aforesaid, but he is not entitled thereto since it could not be said that he acted in good faith without knowledge of the facts, and thereby altered his position to his detriment.

Under the circumstances heretofore recited in this case, we conclude that defendant had timely constructive notice of plaintiff's prior rights under its conditional sales contract, and should not prevail.

There is also another very good reason why defendant should not recover in this case. Concededly, defendant and his attorney had timely actual notice of plaintiff's rights under its conditional sales contract. In 7 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. Ed.), § 4591, p. 483, citing authorities, it is said: "It has also been pointed out that the purpose of recording a conditional sales contract is to give constructive notice,

and therefore the purpose of the recording statutes is fulfilled if a person has actual notice or knowledge of the existence of the contract of sale." See, also, 47 Am. Jur., Sales, § 919, p. 127.

As early as McCormick v. Stevenson, 13 Neb. 70, 12 N. W. 828, this court concluded that a contract, providing that the title to personal property shall not pass to the vendee until the purchase money is paid, is valid between the parties, and that a party purchasing with actual notice that the debtor is not the owner of the property is not protected. See, also, Peterson v. Tufts, 34 Neb. 8, 51 N. W. 297, wherein it was concluded that if attaching creditors or their attorneys had timely actual notice of the vendor's prior rights under a conditional sales contract which retained title pending payment of the balance due, such notice would be effectual to protect such vendor's valid rights.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed. All costs are taxed to defendant.

AFFIRMED.