HARRY L. CALHOUN, appellant, v. FARM BUREAU MUTUAL INSUR-
ANCE COMPANY, appellee.

No. 51194.

(Reported in 125 N.W.2d 121)

DECEMBER 10, 1963.

MODIFIED AND REHEARING DENIED FEBRUARY 11, 1964.

Newport, Wine & Schebler, of Davenport, for appellant.

John E. McCracken, of Davenport, for appellee.

MOORE, J.—This is a law action by plaintiff, Harry L. Cal-
houn, to enforce payment by defendant, Farm Bureau Mutual
Insurance Company, on its automobile insurance policy with

him for collision damage to a 1958 Pontiac automobile. Defendant alleged plaintiff had sold the car prior to its damage and was not the owner. Plaintiff had an Iowa Certificate of Title to the vehicle on which he relied to establish his ownership under Code section 321.45(2).

After trial to the court and a judgment dismissing his petition and assessing costs against him, plaintiff has appealed.

The facts are not in dispute. In June 1960 plaintiff purchased a 1958 Pontiac and obtained a certificate of title (exhibit 1) showing him as owner. Within a few days he obtained from defendant an insurance policy including "collision coverage" with a $50 deductible clause therein.

In November 1960 plaintiff and Rick Hudson, his fellow employee and friend, agreed to the terms of a trade of automobiles. The latter part of November they took possession of each other's automobile. Each was to keep in repair the vehicle in his possession. In order to finance the trade, Hudson was to apply for a loan from his credit union when he became eligible on January 5, 1961. No transfer of the certificate of title on the 1958 Pontiac was to be made by plaintiff until Hudson's loan had been approved by the credit union.

December 10, 1960, Hudson driving the 1958 Pontiac wrecked it causing total loss. Plaintiff notified defendant insurance company and made claim under the "collision coverage" section. After full disclosure by plaintiff of his arrangement with Hudson, defendant denied his claim on the ground he was not the owner of the car. The value of the car was $2200.

The trial court found there had been a completed sale of the Pontiac prior to collision damage and therefore plaintiff was not insured by defendant's policy for damages to a car not owned by him. The court ruled the statute, Code section 321.45, requiring a certificate of title to an automobile has no reference to the transfer of title between buyer and seller.

Plaintiff asserts the trial court erred in these findings and ruling. He contends the certificate of title to an automobile is conclusive evidence of ownership except for purpose of determining whether the certificate holder is liable for damages to

others resulting from negligent operation of the automobile by another. He argues but for this exception, which is stated in the statute, by Code section 321.45(2), title remains in the registered owner until he assigns the certificate of title. It provides:

"321.45 Title must be transferred with vehicle. * * *

"2. Except as provided in section 321.50 and except for the purpose of section 321.493 no person shall acquire any right, title, claim or interest in or to any vehicle subject to registration under this chapter from the owner thereof except by virtue of a certificate of title issued or assigned to him for such vehicle or by virtue of a manufacturer's or importer's certificate delivered to him for such vehicle; nor shall any waiver or estoppel operate in favor of any person claiming title to or interest in any vehicle against a person having possession of the certificate of title or manufacturer's or importer's certificate for such vehicle for a valuable consideration. Except as provided in section 321.50 and except for the purpose of section 321.493, no court in any case at law or equity shall recognize the right, title, claim or interest of any person in or to any vehicle subject to registration sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued or assigned in accordance with the provisions of this chapter."

Section 321.50 relates to lien provisions. Section 321.493 relates to the exception to liability for damages. Neither has any application here.

Soon after the enactment in 1953 of the Iowa Motor Vehicle Certificate of Title Law, of which section 321.45(2) is a part, Professor Richard S. Hudson of the Drake University College of Law wrote the first of his three excellent articles discussing the Iowa Act and other Acts. Those articles are "1953 Iowa Motor Vehicle Certificate of Title Law", 3 Drake Law Review 3 (1953), "Iowa Motor Vehicle Certificate of Title Law II", 4 Drake L. Rev. 86 (1954) and "Iowa Motor Vehicle Certificate of Title Law III", 5 Drake L. Rev. 31 (1955). At pages 3 and 4 of his first article he states:

"By action of the 55th General Assembly, Iowa has joined

the states with comprehensive motor vehicle certificate of title laws. This has been accomplished by amendments to specific sections of Chapter 321, Code of Iowa (1950). The net result is to give Iowa a certificate of title law substantially like those of Ohio and Nebraska. It is assumed that the purpose of the change from the existing registration system to a certificate of title law was to prevent theft of motor vehicles. The explanation attached to H. F. 260, 55th General Assembly (a bill identical with S. F. 181), states that the bill is designed to benefit the motor vehicle owner. * * *

. "However, the essential feature of the system is that the certificate of title issued for each motor vehicle and other vehicles subject to registration will be part of a chain of title, as certificates are assigned and new certificates issued. It is designed to show ownership interests and incumbrances on the title certificate."

Since the enactment of section 321.45 (2) we have had but one case involving whether title to a motor vehicle has passed without an assignment of the title certificate. In Varvaris v. Varvaris, 255 Iowa 800, 124 N.W.2d 163, we held a gift inter vivos of two automobiles was not completed without assignment of title certificates under the statute.

Several other jurisdictions have construed their automobile title certificate statutes. The holdings are not uniform as might be expected. Facts and different statutory provisions account for what at first reading appears to be sharp conflicts. Ohio and Nebraska statutes are almost identical with Code section 321.45 (2).

In Crawford Finance Co. v. Derby, 63 Ohio App. 50, 53, 54, 25 N.E.2d 306, 308, a dealer had mortgaged an automobile to plaintiff finance company and gave it possession of the title certificate. Defendant Derby, without any knowledge of the chattel mortgage, purchased the automobile from the dealer and paid for it by transferring his used car and paying cash to the dealer. In a replevin action the Ohio court held for the finance company. It said:

"Section 6290-4, General Code, quite effectively precludes a would-be purchaser from acquiring any right or interest what-

ever in a motor vehicle, except by way of an official certificate of title. * * * it is apparent that the Legislature intended to set up one and only one method by which liens on or titles to a motor vehicle could be acquired. To a purchaser, it makes a certificate of title issued by a clerk of courts on a proper application, accompanied by the preceding certificate, either manufacturer's or owner's, the sine qua non to any right or title therein.

"The manufacturer's certificate was the key to the whole situation. As long as plaintiff held it, it knew no one could acquire a title or lien ahead of its lien, nor could 'any waiver or estoppel operate in favor' of any person against it, and it knew that 'no court in any case at law or in equity' could 'recognize the right, title, claim or interest of any person in or to any [that] motor vehicle.' "

In re Estate of Case, 161 Ohio St. 288, 292, 118 N.E.2d 836, 839, holds a daughter in whose name the certificate of title and insurance were issued was the owner of a car, although her deceased father purchased and paid for it, as well as for the license and insurance, and had possession of it most of the time. The Ohio court states:

"This statute says two things in clear and unambiguous language: (1) No person acquiring a motor vehicle shall acquire any *right, title, claim* or *interest* in it until he shall have issued to him a certificate of title. No certificate of title was issued to the decedent. (2) No court in any case *at law* or *in equity* shall recognize the *right, title, claim* or *interest* of any person in or to any motor vehicle, etc., unless evidenced by a certificate of title. The only certificates of title issued are in the name of the daughter.

"In view of this statute, how can a court entertain evidence to contradict the certificate of title? How can a court find that the *equitable* title is in someone other than the holder of the certificate of title? All courts are forbidden, either in law or equity, to *recognize* any right, claim or interest, as well as any title, unless evidenced by a certificate of title.

"It has been urged that the General Assembly did not in-

tend the results which seem inevitable under this statute. This argument is supported by citing the purpose of the Ohio Certificate of Title Act as being 'to prevent the importation of stolen motor vehicles and thefts and frauds in the transfer of title to motor vehicles.' There is much force to this argument but it does not change the language of the statute. It may also be observed that the accomplishment of the purpose above set forth might necessitate and justify an act so broad and so drastic that it would affect conduct and fields of activity not included within the scope of the primary objective. Furthermore, if the common law of resulting trusts, so far as motor vehicles are concerned, has been abrogated by this statute, such result is not wholly bad. If the title must be considered as vested in the one whose name appears in the certificate (in the absence of fraudulent conduct on the part of the holder such as would cause the certificate to be voidable), then fraudulent concealment of ownership is prevented. To that extent the statute operates to prevent fraud.

"Then, too, the practical result—which is to require all motor vehicles to be registered in the names of the real owners and to make valid certificates of title conclusive as to ownership and title—works no real hardship upon anyone.

"Further discussion of the statute will serve no purpose. Borrowing the expression from a recent opinion of a judge of the Court of Appeals, we suggest that the meaning of the statute does not gain in clarity by prolixity of statement." (Emphasis by the court.)

In Mutual Finance Co. v. Municipal Employees Union Local No. 1099, 110 Ohio App. 341, 349, 165 N.E.2d 435, 441, the court in reference to the Ohio motor vehicle certificate of title statutes states:

"An automobile is a highly mobile chattel which can be easily transported to other parts of the country with a ready resale value. The Legislature enacted these laws to prevent the trafficking in stolen automobiles. The concept was to devise a system of registration which would reveal the true owner of the vehicle and disclose all liens attaching. It provides for one document to be registered with the Clerk of Common Pleas Court to proclaim ownership and embody liens. The language used in

these statutes is clear, unambiguous, and unequivocal and under the rules of the Supreme Court of Ohio must be given a literal interpretation because it 'means exactly what it says'."

In the case of Mielke v. Leeberson, 150 Ohio St. 528, 83 N.E.2d 209, 210, 7 A. L. R.2d 1342, 1343, the court held: "Under the plain and unambiguous language of Section 6290-4, General Code, a court cannot recognize the right, title, claim or interest of any person in or to any motor vehicle, without the production of a certificate of title or manufacturer's or importer's certificate duly issued in accordance with the Certificate of Title Law, and any other evidence of ownership is not of sufficient weight to sustain a verdict or judgment where title must be proved as a condition precedent for the validity of such verdict or judgment."

In Brewer v. DeCant, 167 Ohio St. 411, 149 N.E.2d 166, 167, it is said: "Under the Ohio Certificate of Title Act, a change in ownership of an automobile is not consummated until a certificate of title is issued in the name of the purchaser. * * * Where a purchaser contracts to buy an automobile and takes possession thereof from an automobile dealer and uses the automobile, such use is a use with the permission of the dealer until such time as a certificate of title thereto is issued to the purchaser."

The Nebraska court in Loyal's Auto Exchange, Inc., v. Munch, 153 Neb. 628, 638, 45 N.W.2d 913, 920, says:

"A purchaser who receives possession of an automobile without obtaining the certificate of title thereto, as required by our statute, acquires no title or ownership therein. A subsequent purchaser for value of the automobile, who obtains the certificate of title by complying with the statutory requirements relating thereto, obtains the title and ownership thereof. His title and ownership are superior to any rights the first purchaser may have."

In State Farm Mut. Auto. Ins. Co. v. Drawbaugh, 159 Neb. 149, 65 N.W.2d 542, plaintiff's petition for replevin was dismissed where it sought to obtain possession of a vehicle for which it had paid a loss due to theft. The insurance company

had not obtained a transfer of title. The court cites and quotes from earlier Nebraska opinions, including Loyal's Auto Exchange, Inc., v. Munch, supra, and also the Ohio case of Crawford Finance Co. v. Derby, supra. At page 154 of 159 Neb., page 545 of 65 N.W.2d, it is said:

"It is apparent * * * it was the intention of the Legislature to make certain in the act relating to titles and transfers of motor vehicles, the only means whereby transfers and titles to motor vehicles could be made."

The facts in Turpin v. Standard Reliance Insurance Co., 169 Neb. 233, 99 N.W.2d 26, are similar to our case here. One Jones was about to be inducted into the Marine Corps. He made an agreement to sell his 1949 Buick to Turpin in consideration of Turpin making the payments on the automobile which Jones was obligated to pay G.M.A.C. No assignment of the title certificate was made. Turpin while driving the Buick had an accident. Jones' insurance company contended they were not bound to defend because Jones was no longer the owner. The court cites and quotes several of its earlier holdings as well as several from Ohio. At page 249 of 169 Neb., page 36 of 99 N.W.2d, the court states:

"Even assuming that there was such a contract, under the law of the State of Nebraska Turpin was not the owner of the Buick automobile and could not be until such time as he produced a certificate of title thereto as set forth in the cases heretofore cited.

"Referring to the facts, but not repeating them, we conclude that Turpin was driving the Buick automobile with the permission of Jones, the owner thereof, at the time of the accident, and that the Standard insurance contract extended to Turpin as provided for in such contract."

For other Nebraska cases holding title remains in a registered owner until he assigns the certificate of title see Burns v. Commonwealth Trailer Sales, 163 Neb. 308, 79 N.W.2d 563; Universal C. I. T. Credit Corp. v. Vogt, 165 Neb. 611, 86 N.W.2d 771; Terry Bros. & Meves v. National Auto Ins. Co., 160 Neb. 110, 69 N.W.2d 361; Snyder v. Lincoln, 156 Neb. 190, 55 N.W.2d 614; Garbark v. Newman, 155 Neb. 188, 51 N.W.2d 315.

Defendant cites Hicksbaugh Lumber Co. v. Fidelity & Casualty Co. of N. Y., Tex. Civ. App., 177 S.W.2d 802. Factually it is much like the case here except the insurance policy provided coverage ceased upon any change of the insured's interest in the truck. The court held no title passed until there was an assignment of the title certificate but that an agreement to trade did change the insured's interest to such an extent that coverage ceased. To us the holding seems to support plaintiff's contention more than those of defendant.

Hofslund v. Metropolitan Cas. Ins. Co. of N. Y., Wis., 188 F.2d 188, cited by defendant, involves a statute which grants five days for transfer of title and penalty for noncompliance. It is of little value here although it holds a sale is completed without compliance with the Wisconsin registration law.

Defendant argues the reasoning and holding in Federated Mutual Implement & Hdwe. Ins. Co. v. Rouse, 133 F. Supp. 226, should be followed. We do not agree. That opinion written by Judge Graven is based primarily on the provisions of the Iowa Owners' Responsibility Act. It holds a dealer who had sold a used automobile under a conditional sales contract was not an "owner" within the Iowa Owners' Responsibility Law. Even though he had failed to comply with the Iowa Motor Vehicle Certificate of Title Act. The legislature has now amended the title act to so provide. We have no such issue here.

The trial court cited and based its ruling on Garuba v. Yorkshire Ins. Co., Ltd., 233 Iowa 579, 580, 9 N.W.2d 817, and cited cases therein. In Garuba v. Yorkshire the trial court held the registration law provided only one method for transfer of title between buyer and seller. We said: "In this the trial court erred. The statutory provision referred to has no reference to the question of transfer of title as between buyer and seller." The opinion relates to the motor vehicle registration law and was written ten years before the enactment of the statute (section 321.45(2)) now being considered. Its language is drastically different. Our present statute specifically provides the one and only method for transfer of title between buyer and seller. That is by assignment of the motor vehicle title certificate.

Defendant has cited Motor Credit Corp. v. Woolverton,

Fla., 99 So.2d 286, 72 A. L. R.2d 334, and Strickland Enterprises, Inc. v. Atlantic Discount Co., Fla., 137 So.2d 627. Each considers the Florida automobile title certificate law which is much like our statute. The holdings are not in harmony with those of Ohio and Nebraska which we believe are well reasoned and logical.

We have frequently said when decisions from other jurisdictions are not in harmony it is our duty to decide which line of authority is more logical and persuasive. Dawson v. Sisk, 231 Iowa 1291, 4 N.W.2d 272, 141 A. L. R. 1219; Acuff v. Schmit, 248 Iowa 272, 78 N.W.2d 480; Warner v. Hansen, 251 Iowa 685, 102 N.W.2d 140.

Applying the holdings of the Ohio and Nebraska courts and the clear, unambiguous and unequivocal language of Code section 321.45(2), we conclude plaintiff as titleholder remained the owner of the 1958 Pontiac and entitled to recover under the "collision clause" of his policy with defendant. To hold otherwise would nullify the statute. To do so would also seem quite inconsistent with our decision in Varvaris v. Varvaris, supra, 255 Iowa 800, 124 N.W.2d 163.

The case is reversed and remanded to the trial court for trial as to the amount of damages only.—Reversed and remanded.

All JUSTICES concur.