WILLIAM E. WALLACE, APPELLANT, v. A. W. COX, ET AL., APPELLEES.

FILED DECEMBER 19, 1916. No. 18944.

1. **Replevin: JUDGMENT.** Section 7833, Rev. St. 1913, provides that, when the finding is for the defendant in an action of replevin, the judgment shall be "for a return of the property or the value thereof in case a return cannot be had." The "value thereof" is instead of a return of the property when a return cannot be had, and should be the equivalent of the property itself as it was at the time of the trial.

2. ———: **Appeal: BOND: DAMAGES.** If, upon appeal to this court, such judgment is affirmed, and the property is returned to the defendant pursuant to such judgment, in an action upon the appeal bond the plaintiff cannot recover damages occurring prior to the original judgment.

APPEAL from the district court for Webster county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*L. H. Blackledge,* for appellant.

*Bernard McNeny, contra.*

SEDGWICK, J.

This action is upon a replevin bond. It was once before in this court, and in the first opinion the judgment of the district court was affirmed. 92 Neb. 354. Afterwards, upon rehearing, it was reversed and the cause remanded. 94 Neb. 194. There has since been a trial in the district court and the case is again appealed.

In this last trial the court instructed the jury to find for the plaintiff the amount that the jury in the first trial found as damages, together with the costs of the first trial, and then instructed the jury that the only question for them to determine was whether the property in question was damaged after the trial in the original replevin suit, and the amount of such damage. The plaintiff asked the court to instruct the jury that they should find all damages which "occurred while the property was in the possession of the Clark Imple-

Wallace v. Cox.

ment Company or its agents from the time it was taken in the replevin suit * * * to the time of the offered return" of the property. The court in several different instructions made it plain to the jury that they should not allow any damages to the property in this suit upon the bond, which damages occurred before the trial of the replevin suit. This was upon the theory that the defendants in replevin must upon the trial recover any damages that have occurred to the property up to that time, and this is the principal, if not the only substantial, question that is presented in this record. The statute provides that, when the finding is for the defendant, the judgment shall be "for a return of the property or the value thereof in case a return cannot be had." Rev. St. 1913, sec. 7833. The "value thereof" is instead of a return of the property when a return cannot be had, and should be the equivalent of the property itself as it was at the time of the trial, that is, should be its value at the time of the trial, and, if it has been decreased in value by the action of the plaintiff in replevying it, such loss of value would be damages which should be included in the judgment in favor of the defendant in replevin. The New York court has so decided under a similar statute; that is, the New York court construes the statute to mean that the value thereof which is to be recovered in case the property cannot be returned is the value at the time the property should be returned, that is, at the time the judgment is entered. The contention of the plaintiff in this case now is that he ought to be allowed to prove that as a matter of fact the jury did not take into consideration any damages to the property in their verdict in the original replevin suit.

The trial court on this last trial has followed the decision of this court upon the former appeal, and the judgment is therefore

AFFIRMED.

LETTON, J., dissents.

HAMER, J., dissenting.

I am unable to agree with the majority opinion. William F. Wallace, the defendant in the replevin suit and the plaintiff in this case, testified that there was taken from him a threshing machine. It was a 10-horse Russell engine, separator, blower, feeder, driving belt, water tank—a threshing machine outfit. It was returned to his shed, and he testified that he refused to receive it; also that the property was in bad condition; that the cylinder was pitted where it had been run without oil and burned; that the driving wheels were broken; that the canopy top was torn; that the cylinder guides were all cut; that the axle on the water tank was broken; that the grain pan was warped, and where there was a strip of tin to separate the grain it had come loose, and nails had been driven in the separator along the side; that the driving belt was worn out and the other belts were badly worn; that the engine was not getting enough oil; that the man who was running it said that he tried to pump oil into it, but the cylinders were so worn that it would not take any effect; that they started about 9 or 10 o'clock in the morning to go 2¾ miles, and it took until after 2 o'clock in the afternoon to go that distance; that it took a big tank of water and eight tanks besides to run the machine to town; that the property was not worth over $700; also that he offered to prove that he had had no access to the machine and engine, and that there was no opportunity to examine it from the time it was taken from him until it was offered back; that he did not know its actual condition till that time; that he offered to prove by a witness on the stand that the difference in the value of the outfit in controversy in the replevin suit from the time it was taken from him until it was offered back to him was $1,200; that between the time when it was taken from him under the replevin proceedings and the time when it was offered back it was kept in the possession of the Clark Implement Company

and its agent, Eli H. Cox, and away from him, and without his having any access or means of access to it, or any knowledge or means of knowledge of its condition, and that the actual condition at the time it was tendered back was not known to him, and that the condition at the time of the trial of the replevin suit could not be ascertained by him; that the said Clark Implement Company and its agent, Cox, concealed the fact of the damage and injuries from him, so that he did not know the same. This is the third time this case has been before this court.

The action is one brought upon a replevin bond by the successful defendant in a replevin suit. The machine, when returned, was in so badly a damaged condition as to give the defendant in the case the option of rejecting it and suing for its value on the bond. Upon the trial of the replevin suit the jury found that the defendant (plaintiff herein) was the owner and entitled to the possession of the property, and that, at the time the property was taken under the writ, its value was $2,000, and that defendant had sustained damages by the wrongful taking and using of said property in the sum of $404.50, and costs $121.60. Upon the trial of the action on the replevin bond, there was a verdict and judgment for the plaintiff in that case for $2,686.33. The judgment was first affirmed (92 Neb. 354) upon condition that plaintiff remit from the judgment the sum of $404.-50. The badly damaged condition of the property controlled the views of the majority. It was said: "Our statute does not provide that the property shall be returned in the same condition as when taken, as in some states, but the holding is practically uniform that such a statute is not necessary, as we have in effect held. Some of the authorities containing these views we here cite, but without quoting from any." The citations are: "*Eickhoff v. Eikenbary,* 52 Neb. 332; *Berry v. Hoeffner,* 56 Me. 170; *Parker v. Simonds,* 8 Met. (Mass.) 205; *Capital Lumbering Co. v. Learned,* 36 Or. 544; *Childs*

*v. Wilkinson,* 15 Tex. Civ. App. 687; *Fair v. Citizens State Bank,* 69 Kan. 353; *Douglass v. Douglass,* 21 Wall. (U. S.) 98; *Pittsburgh Nat. Bank of Commerce v. Hall,* 107 Pa. St. 583; 34 Cyc. 1551, 1552; Cobbey, Replevin (2d ed.) sec. 1182; Wells, Replevin (2d ed.) sec. 422; Shinn, Replevin, sec. 679"—which we have examined.

It was then said that the judgment of the district court would be reversed and the cause remanded, unless the plaintiff within 60 days from the rendition of the order remitted from the judgment $404.50 as of the date of the judgment: "If such remittitur is filed, the judgment of the district court for the sum of $2,121.60, with interest at 7 per cent. on $2,000 from the 19th day of July, 1909, will be affirmed, but at the costs of the appellee."

Judge Sedgwick dissented from the above opinion, and he claimed in his dissent that the plaintiff was not justified in refusing to accept the property when it was returned. He claimed that the petition and the evidence failed to make a case for the plaintiff, because they did not allege or prove that there was any other or different damage than that which the jury allowed in their verdict. He stated that no reason was given for refusing a return of the property: "The evidence and the rulings of the trial court show plainly that the court tried the case upon the incorrect theory that this plaintiff would be justified in refusing to receive a return of the property if he could show that the property was not in the same condition when it was returned as it was when it was replevied, without regard to the fact that he had been allowed $404.50 because of the change in the condition of the property." Judge Sedgwick's contention was: "If the property replevied is delivered to the plaintiff and the plaintiff has damaged the property in any way while so in his possession, there seems to be no doubt that the defendant may upon the trial of the replevin action recover such damages." Judge Sedgwick's view is clearly apparent

when he says: "If he (plaintiff) fails to return the property at once, and retains it, and the property is damaged in his possession while he retains it after the judgment in replevin, a different question is presented, which is not involved in this case." He was then of the opinion that the judgment of the district court should be reversed. The majority opinion affirmed it.

The case was heard on rehearing before this court, and Judge Rose delivered the majority opinion. 94 Neb. 194. It was said in the third paragraph of the syllabus: "Deterioration in the value of replevied property, while it is unlawfully detained, does not alone justify the owner in refusing to accept it, when returned in due time pursuant to a judgment in replevin, damages to the property after the rendition of such a judgment being recoverable in an action on the replevin bond."

If I understand this aright, it is contended that because the property may be returned it must be received. The condition apparently is that in any event the property must be received, and then if it is not in the same condition that it was when taken there must be another law suit, and this last case must be brought upon the replevin bond. In this case the property in controversy was the threshing machine and a traction engine. In the first opinion Judge Reese calls attention to the damaged condition of the machine. It will be readily understood that an old, worn-out threshing machine would be of very little, if any, value, and a badly damaged traction engine would only be junk. The contention apparently is that the strict letter of the statute must be followed, and that, in any event, when the machine is returned, however badly injured it may be, the party from whom it was taken is bound to accept it. That does not seem to me to be good law or good business.

While the judgment of the district court was affirmed in the opinion delivered by Judge Reese, and it seems to have been held in that case that the damaged condition

of the threshing machine and engine was a good reason why they should not be received when tendered by the plaintiff in that case to the defendant therein, yet by the time the same case was reached on rehearing it was held, Judge Rose delivering the opinion, that the damaged condition of the threshing machine and engine furnished no sort of good reason for not receiving them, and that the defendant in that case was bound to receive the same old threshing machine and engine when tendered, no difference how much they had been injured since they were taken away from the defendant, and regardless of the circumstances under which they might have been kept out of sight of the defendant, and regardless of the circumstances surrounding the transaction and the trial, and without reference to the defendant knowing their condition, and that the statute contemplated nothing else except that the battered old threshing machine, though only fit for kindling wood, and the burned-out old engine, though only fit for the junk heap as old iron, must be received when offered to the defendant, and at any loss to him. In other words, this theory permits the plaintiff to take away from the defendant his property, to keep and use it up to the end of a long lawsuit, and then, when the plaintiff has lost the case, he may return the property which he has taken away and injured and rendered worthless, and he then is bound to receive it, whether or no, and is without remedy, except by bringing another lawsuit on the replevin bond, which may be attended by all the uncertainties and loss of time and money incident to any other lawsuit.

Section 7833, Rev. St. 1913, refers to sections 7831 and 7832, and says that the judgment in replevin "shall be for a return of the property or the value thereof in case a return cannot be had, or the value of the possession of the same, and for damages for withholding said property and costs of suit." Of course, where the property is very much deteriorated in condition, or

shrunken in value, this section, if it is to be strictly construed, cannot give relief. It should be considered in conjunction with the two sections to which it refers. In section 7831 it is provided that, if the property has been delivered to the plaintiff and judgment be rendered against him on demurrer, or if he otherwise fail to prosecute his action, the court on the application of the defendant shall impanel a jury "to inquire into the right of property and right of possession of the defendant to the property taken. If the jury shall be satisfied that said property was the property of the defendant at the commencement of the action, or if they shall find that the defendant was entitled to the possession only of the same at such time, then, and in either case, they shall assess such damages for the defendant as are right and proper; for which, with costs of suit, the court shall render judgment for the defendant."

Section 7832 provides: "In all cases, when the property has been delivered to the plaintiff, where the jury shall find upon issue joined for the defendant, they shall also find whether the defendant had the right of property or the right of possession only, at the commencement of the suit; and if they find either in his favor, they shall assess such damages as they think right and proper for the defendant; for which, with costs of suit, the court shall render judgment for the defendant."

It will be noticed that each judgment referred to in the sections quoted is a judgment in a replevin suit. Neither of these sections seems to have the replevin bond in mind; yet the law provides for the replevin bond, and these sections are not complete, unless the provision of the Code with reference to the replevin bond is also to be kept in mind. Section 7827, relating to the bond, provides that the sheriff or other officer shall not deliver to the plaintiff the property taken until there has been executed by one or more sureties of the plaintiff

a written undertaking to the defendant in at least *double the value* of the property taken, "to the effect that the plaintiff shall duly prosecute the action and pay all costs and damages which may be awarded against him, and return the property to the defendant, in case judgment for a return of such property is rendered against him." Neither of the sections referred to specifically provides what shall be done in case the property is so damaged when it is returned that it is of little or no value. If a strict interpretation of these sections is to be given, then the defendant, although entitled to the property, is without remedy. In other words, if these sections quoted contain the sum of human knowledge on the subject, the injured defendant is utterly without prospect of relief. This can never have been intended, and no doubt the purpose of the section relating to the replevin bond is that damages may be recovered against the plaintiff in a proper case in which he has injured the defendant.

In *Eickhoff v. Eikenbary*, 52 Neb. 332, it was stated in paragraph 3 of the syllabus: "A plaintiff in replevin against whom judgment has been rendered, must, in order to satisfy the judgment for a return of the property, return or offer to return the identical property replevied and not other property of like kind and value." In *Reavis v. Horner*, 11 Neb. 479, it was held that a party might return a portion of the property, where its value had been separately ascertained, and tender the value of the remaining property. It is said in the body of the opinion in *Eickhoff v. Eikenbary, supra:* "There can be no doubt that in order to satisfy a judgment for the return of property the identical property must be tendered, *in substantially the condition in which it was received*." In that case the property in controversy was lumber. After the property was replevied, the plaintiff went on with his business and proceeded to get other lumber. When he got beaten, it was decided that any sort of lumber would not do.

100  Neb.—39

It must be the same old lumber and in the same condition that it was when it was taken.

In *Berry v. Hoeffner,* 56 Me. 170, it was held, as stated in the second paragraph of the syllabus: "If goods have been damaged since they were replevied, and while in the possession of the plaintiff in replevin, their mere restoration in a damaged condition will not be a compliance with the bond which requires them to be restored in like good order and condition as when taken."

In Massachusetts, by the statute of 1789 (Laws 1789, ch. 26, sec. 4), the proviso of the writ was: "And also to return and restore the same goods and chattels, in like good order and condition as when taken, in case such shall be the final judgment." Afterwards the statute was amended, and as amended the language was, "to return the said property, in case such shall be the final judgment" (Rev. St. 1836, ch. 113, sec. 19); but no mention was made that the goods and chattels were to be restored in like order and condition. In *Parker v. Simonds,* 8 Met. (Mass.) 205, 210, it was contended that because of this change the plaintiff in replevin was not bound to restore the goods replevied in the same condition as when taken. The court held otherwise.

To hold that in every case the damages found by a jury embrace all damages which defendant may be entitled to will often result in injustice. To illustrate: Certain staple articles having a well-known market value are replevied. They pass from the possession of the defendant to that of the plaintiff, and while in plaintiff's possession are so far removed from the defendant that he has no knowledge of their condition, presumably the plaintiff may be exercising proper care to preserve them. Upon trial of the case, however, it is shown that the articles were the property of the defendant and properly in his possession. Therefore a verdict must be returned in his favor. Suppose

the market value of the articles has depreciated. Defendant knows this fact, and offers proof of it in evidence. He is entitled to the verdict for damages, which shall include the depreciated value. He gets this. Plaintiff then returns the property. It had a value when taken from defendant of $10,000, so found by the jury. The same articles, because of the depreciation in the market value, are, though in good condition, worth at the time of the trial but $7,500. Suppose ordinary wear and tear incident to plaintiff's use is $500. The jury makes the loss good by finding defendant's damage to be $3,000. However, because of plaintiff's neglect or failure to properly care for the articles returned, they have suffered a loss in value and are worth but $5,000. Defendant in the replevin suit must accept the goods worth $5,000. 94 Neb. 194. He has judgment for $3,000 and the loss of $2,000 in place of what the plaintiff wrongfully took from him worth $10,000. If defendant must suffer this, then here is a wrong without a remedy. Defendant is deprived of $2,000 through a fiction that he has recovered all damages in the replevin suit. Such a theory is a fiction in any case where the defendant has no knowledge that the goods had been injured by more than the ordinary wear and tear. That is this case.

In the case of *Washington Ice Co. v. Webster*, 125 U. S. 426, which was a suit on a replevin bond, Mr. Justice Blatchford used this language: "The principal argument on the part of the defendants in the present suit is that in the statute of Maine (Rev. St. 1857, 1871, ch. 96, sec. 11), which provides that, in a replevin suit, 'if it appears that the defendant is entitled to a return of the goods, he shall have judgment and a writ of return accordingly, with damages for the taking and costs,' the words 'damages for the taking' mean all damages resulting from the taking and detention of the goods; that, if the defendant in replevin recovers judgment for a return of the goods replevied, he may, at his elec-

tion, have the damages which he has sustained by reason of the taking and detention of them, to the time of such judgment, assessed in the replevin suit, or he may recover those damages in a suit on the bond, but cannot have both." Judge Blatchford then said that the contention was "that, as the plaintiff in this suit failed to have such damages assessed in the replevin suit, he cannot recover them in the present suit. This point seems to us, at best, to be altogether technical, and not to be founded on any sound principle." If I understand this, Justice Blatchford condemned the principle for which the majority opinion contends. I think the law is, and ought to be, that, if the facts are known to the plaintiff which relate to the alleged damages, the extraordinary damages must be considered at the time of the trial of the replevin case, and, if such damages are allowed, they should be put into the verdict; but, if there are damages to the property in controversy which occur after the trial, then such damages form a sufficient basis for an action on the replevin bond. The damages awarded in the replevin action should be conclusive of all damages sustained prior to the trial of the replevin suit, unless there has been some sort of concealment or other sufficient cause that has prevented their discovery by the plaintiff. The principle of allowing litigants to get done at some time is recognized in *Reams v. Sinclair,* 97 Neb. 542, wherein, notwithstanding the prior judgment in the ejectment case by reason of plaintiff's failure to show a legal title, he was permitted in the second suit to establish and quiet his title based upon the same defective instrument which had resulted in his defeat in the former action.

In *Ewald v. Boyd,* 24 S. Dak. 16, the horse in controversy died. The judgment was rendered July 10, 1907. On July 13, 1907, the defendant wrote to the plaintiffs, requesting them to come and get the horse. This request reached the plaintiffs on July 29, 1907.

One of the plaintiffs went to the defendant's premises, and was told that the horse died about a week before out in the slough in the pasture. The plaintiff was not shown the body of the horse, but he was shown a mound where it was claimed the horse was buried. It was the contention of the defendant that, inasmuch as he had offered to deliver the horse after judgment and before plaintiffs came after it, and the horse had died through no fault of his, it worked a satisfaction of that part of the judgment awarding the plaintiff possession of the horse or its value. The court said: "After the judgment was entered, the defendant retained possession of this horse at his own peril. If he desired to protect himself against the alternative judgment for value of the horse, he was bound to return the horse to plaintiffs. Plaintiffs, if they saw fit, could allow their judgment to stand without issue of execution, desiring that a time would come when defendant would be unable to turn over the horse, and they then be able to collect the alternative judgment which might be more than the horse was worth."

In *Hinkson v. Morrison*, 47 Ia. 167, there was an action brought on defendant's redelivery bond, and defendant attempted to plead as a partial defense the death of one horse. The court said: "We think the defendant's bond cannot be discharged *pro tanto* by showing the mere fact that one of the horses died. By the verdict his detention of the horse was found to be wrongful. His undertaking is absolute to return the property in as good condition as it was when the action was commenced. His obligation is entirely different from that of a bailee rightfully in possession."

In *Lillie v. McMillan*, 52 Ia. 463, the plaintiff took possession of property pending the suit. The jury found for the defendant. One horse and one cow had died. The defendant elected to take the money judgment, and the court held that this was his right, not merely for the property that had died, but for all of it.

In *Capital Lumbering Co. v. Learned*, 36 Or. 544, it was held, as stated in the second paragraph of the syllabus: "Where, in replevin, plaintiff takes possession of the property, and judgment is rendered for its return, and it is of such a character that it can be moved, plaintiff must seek defendant and there tender it to him in the same condition as when received, to avoid liability on his bond."

In *Vallancy v. Hunt*, 26 N. Dak. 611, it was held, as stated in the syllabus: "A party who desires to avoid the penalties of a redelivery bond in replevin must show a delivery or offer of delivery of the property within a reasonable time, in substantially as good condition as when taken, and without material depreciation in value."

In *Moran v. Plankington*, 64 Mo. 337, it was held that the judgment in the first action is only a bar to the second action as far as the plaintiff knew, or ought to have known, of the facts in time to have included the omitted articles in such first action.

In *Schrandt v. Young*, 62 Neb. 254, it is said in the syllabus: "The rule announced in *Romberg v. Hughes*, 18 Neb. 579, that damages for detention may only be had where there is a return of the property, should be restricted to damages for deterioration or depreciation after the taking." In the body of the opinion it was said: "If the property is injured or deteriorates in value after it is taken, a return does not make the defendant whole, because he does not get it in the condition in which it was, and, in order to be fully restored to his former position he ought to have the difference in value as damages. This is universally recognized, and such deterioration is considered a proper element of damage." Commissioner Pound, who prepared this opinion, cited *Hooker v. Hammill*, 7 Neb. 231; Shinn, Replevin, sec. 648.

It would seem that the damages in a replevin suit should be compensation for the interruption of the defendant's possession, the loss of the use of the goods

from the time of the taking under the writ of replevin until they are restored, and their deterioration in value within the intervening time. I think that the judgment of the district court is not sustained by the evidence, and that *Teel v. Miles,* 51 Neb. 542, should be overruled or modified. I think that the majority opinion is against a liberal interpretation of the statute, that it is against public policy, and that it is too technical.