General Motors Acceptance Corp. *v.* The Birkett L.
Williams Co., et al.

[Cite as G. M. A. C. v. Birkett L. Williams Co.,
17 Ohio Misc. 219.]

(No. 839011—Decided January 25, 1969.)

Common Pleas Court of Cuyahoga County.

*Messrs. Benesch, Friedlander, Mendelson & Coplan* and *Mr. Richard L. Phillips*, for plaintiff.

*Messrs. Nadler & Sokolsky*, for defendant, Andrew Marino.

*Messrs. Hollingsworth & Hollingsworth* and *Mr. Jay A. Hollingsworth*, for defendant, Birkett L. Williams Co.

McMONAGLE, J. On January 13, 1967, the plaintiff filed the within action in conversion against The Birkett L. Williams Co. and Andrew Marino. When the action came on for a pretrial hearing, court and counsel agreed, in order to facilitate its ultimate final disposition, that an amended petition be filed containing a detailed narration of the facts upon which the plaintiff relies for recovery; that to this pleading each defendant would file a demurrer on the ground that the amended petition did not state a cause of action; that the question of law thereby presented would be determined by the court; that if one or both of the demurrers were sustained, that the plaintiff would not plead further as to such defendant and final judgment would thereupon be entered in favor of such defendant or defendants; if a demurrer was overruled, that the defendant would file an answer to the amended petition and the court would assign the action for a determination of the disputed facts and subsequent entry of final judgment as to all issues.

The matter is now for decision by the court on the demurrers of the defendants.

Plaintiff bases its cause of action upon the following alleged facts:

July 15, 1966: Simon Proctor a. k. a. Anthony Proctor bought a car in Texas and executed a conditional sales contract which was duly noted on the Texas Certificate of Title.

August 10, 1966: The conditional sales contract became in default.

August 12, 1966: Anthony Proctor registered the motor vehicle in Rhode Island, averring he bought it from Gaius Joel Solzak of Providence, Rhode Island.

Oct. 16, 1966: Simon Proctor brought the car into Ohio.

Oct. 19, 1966: Simon Proctor procured an Ohio Certificate of Title based on the Rhode Island title and an application showing "liens" "none."

Nov. 2, 1966: The car and the Ohio Certificate of Title were transferred to Andrew Marino, and on the same day, another Certificate of Title was issued in the name of Andrew Marino. Consideration—$1,000.00. Paid $30.00 use tax.

Nov. 25, 1966: The car and the title were transferred to Birkett L. Williams Co. by Andrew Marino.

Nov. 28, 1966: An Ohio Certificate of Title was issued in the name of Birkett L. Williams Co. This title was then assigned by Birkett L. Williams Co. to D. & B. Motors.

Dec. 16, 1966: Plaintiff advised both defendants of its interest in the car.

Jan. 6, 1967: Birkett L. Williams caused the issuance to itself of a replacement Ohio Certificate of Title.

Jan. 10, 1967: Birkett L. Williams Co. assigned the car and the title to Andrew Marino who accepted it and retook the car.

Plaintiff's claims are to the effect that on November 2, 1966, when Marino bought the car and had the Ohio title issued in his name, that he thereby converted the car; that on November 25, 1966, when Marino traded the car to Birkett L. Williams Co. and the title was issued in the name of Birkett L. Williams Co., that Marino and Birkett L. Williams Co. "independently and in concert converted the car"; that on January 6, 1967, Birkett L. Williams Co. willfully and knowingly converted the car when it had the title reissued in its own name (it had previously assigned the title to D. & B. Motors but an Ohio Certificate of Title had never been issued in the name of D. & B. Motors apparently because of receipt of notice of plaintiff's claim); that on January 10, 1967, Marino and Birkett L. Williams Co. "acted independently and in concert willfully and knowingly converted said car to their own uses" when Birkett L. Williams Co. returned the car to Marino and transferred the title back into his name and he accepted the car and title.

Plaintiff claims that it was the general owner of the

car under the provisions of its conditional sales contract which was in default (Exhibit A) and the law.

*Mercantile Discount & Security Co.* v. *Melick,* 48 Ohio App. 211:

"Ever since the decision in *Robinson, Jr.* v. *Fitch,* 26 Ohio St. 659, it has been the law in Ohio that the interest of the mortgagee under a chattel mortgage is that of general owner of the mortgaged property. * * * The law as thus stated in the case just cited has been often followed by the law courts in Ohio, and is cited in *Metropolitan Securities Co.* v. *Orlow,* 107 Ohio St. 583, 32 A. L. R. 992, where it is stated in the opinion that the rule thus announced had never been departed from."

Plaintiff contends that it is entitled to recover the full value of the car at the time of its alleged conversion as compensatory damages since that value was then less than the indebtedness due on its conditional sales contract. It claims that this value was $1,950.00. Mr. Proctor is not a party to this action nor is the amount of his indebtedness an issue herein.

Plaintiff further contends that the alleged conversions of January 6, 1967, and January 10, 1967, were done willfully and knowingly and that by virtue thereof, it is also entitled to recover punitive damages from the defendants in the amounts of $3800.00.

Each defendant's demurrer contends in substance that the amended petition concedes that he is a bona fide purchaser for value of the automobile without notice of plaintiff's conditional sales contract and that the Ohio Certificate of Title under which the ownership of the car was conveyed to him did not contain any notation of the plaintiff's interest, as provided in Section 4505.13, Revised Code; that therefore, under Section 4505.04, Revised Code, both he and the car are immune from any action either in law or equity, growing out of plaintiff's alleged security interest.

To which plaintiff contends:

1. That its rights, resulting from its duly filed and noted security interest, cannot be destroyed, divested,

eliminated or defeated by the fraudulent procuring by anyone of a certificate of title which did not contain a notation of its interest, or

2. If its interest in the car could be ultimately destroyed, eliminated or defeated by a sale to a bona fide purchaser for value without notice of such interest that, by the provisions of the Uniform Commercial Code, Section 1309.03, subparagraph C, Revised Code, adopted in 1962, that such security interest cannot be so destroyed or eliminated or defeated during the four-month period after the motor vehicle was brought into Ohio, but "continues perfected in this state for four months and also thereafter if within the four-month period, it (the security interest) is perfected in this state;" that since said alleged conversions occurred within that four-month period its right to prevail herein is not affected by Sections 4505.04 and 4505.13, Revised Code.

In reply to this, defendants contend:

If plaintiff had the right to the continuance of its security interest in Ohio, by perfecting it in Ohio within four months after the car was brought into Ohio (which right is denied by defendants), that it has never taken steps to perfect the security interest in Ohio and could not, therefore, be entitled to any rights provided by Section 1309.03, Subsection C, Revised Code.

The question as to whether plaintiff's amended petition states a cause of action must be determined from a consideration of:

1. Section 1309.03 (C) and (D), Revised Code, and its applicability to motor vehicles generally and also its relationship to Section 4505.01-19 *et seq.*, Revised Code (Certificate of Motor Vehicles Title Act).

2. Sections 4505.04 and 4505.13, Revised Code, and the court decisions applicable thereto.

3. The law of conversion as applicable to the facts as averred in the amended petition.

(1) *Section 1309.03 (C) (D), Revised Code:*

"(C) If personal property other than that governed by divisions (A) and (B) of this section is already subject

to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by the law, including the conflict of laws rules, of the jurisdiction where the property was when the security interest attached. However, if the parties to the transaction understood at the time that the security interest attached that the property would be kept in this state and it was brought into this state within thirty days after the security interest attached for purposes other than transportation through this state, then the validity of the security interest in this state is to be determined by the law of this state. If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four-month period it is perfected in this state. The security interest may also be perfected in this state after the expiration of the four-month period; in such case perfection dates from the time of perfection in this state. If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, it may be perfected in this state; in such case perfection dates from the time of perfection in this state.

"(D) Notwithstanding divisions (B) and (C) of this section, if personal property is covered by a certificate of title issued under the statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate."

(2) *Section 4505.04, Revised Code*:

*"Certificate of title as evidence of ownership.*

"No person acquiring a motor vehicle from the owner thereof, whether such owner is a manufacturer, importer, dealer, or otherwise, shall acquire any right, title, claim or interest in or to said motor vehicle until such person has

had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for it; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title, or manufacturer's or importer's certificate for said motor vehicle, for a valuable consideration.

"No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

"(A) By a certificate of title or a manufacturer's or importer's certificate issued in accordance with Sections 4505.01 to 4505.19, inclusive, Revised Code.

"(B) By admission in the pleadings or stipulation of the parties."

*Section 4505.13, Revised Code:*

"*Security interests in motor vehicles.*

"Sections 1309.01 to 1309.50, inclusive, and Section 1701.66, Revised Code, do not permit or require the deposit, filing, or other record of a security interest covering a motor vehicle. Any security agreement covering a security interest in a motor vehicle, if such instrument is accompanied by delivery of a manufacturer's or importer's certificate and followed by actual and continued possession of such certificate by the holder of said instrument, or, in the case of a certificate of title, if a notation of such instrument has been made by the clerk of the Court of Common Pleas on the face of such certificate, shall be valid as against the creditors of the debtor, whether armed with process or not, and against subsequent purchasers, secured parties, and other lienholders or claimants. All liens, mortgages, and encumbrances noted upon a certificate of title shall take priority according to the order of time in which the same are noted thereon by the clerk. Exposure for sale of any motor vehicle by the owner thereof, with the knowledge or with the knowledge and consent of the holder of any lien, mortgage, or encumbrance thereon, shall not render such lien, mortgage, or encumbrance in-

effective as against the creditors of such owner, or against holders of subsequent liens, mortgages, or encumbrances upon such motor vehicle.

"The secured party, upon presentation of the security agreement to the clerk of the county in which the certificate of title was issued, together with such certificate of title and the fee prescribed by Section 4505.09, Revised Code, may have a notation of such lien made on the face of such certificate of title. The clerk shall enter said notation and the date thereof over his signature and seal of office, and he shall also note such lien and the date thereof on the duplicate of same in his files and on that day shall notify the registrar of motor vehicles who shall do likewise. The clerk shall also indicate by appropriate notation on such agreement itself the fact that such lien has been noted on the certificate of title.

"When such lien is discharged, the holder thereof shall note a discharge of same on the face of the certificate of title over his signature. Prior to delivering such certificate to the owner, the holder shall present it to the clerk for the purpose of having the clerk note the cancellation of said lien on the face of said certificate of title and upon the records of the clerk. The clerk, if such cancellation appears to be genuine, shall note such cancellation on the certificate of title, and he shall also note said cancellation on his records and notify the registrar, who shall note such cancellation."

(1) *Section 1309.03 (C) and (D), Revised Code*

The Uniform Commercial Code has been adopted in all 50 states and the District of Columbia. In Ohio it constitutes Sections 1309.01 to 1309.50, Revised Code.

The Ohio Certificate of Motor Vehicle Title Law contains the exclusive Ohio provisions for the perfection of a security interest in a motor vehicle, so as to affect the rights of third parties.

Section 1309.03 (C), Revised Code, is not applicable to motor vehicles in Ohio. Section 1309.03 (C), Revised Code, is applicable to security interests which may be perfected, as to the rights of third parties, by merely filing a copy of the financing statement with the County Recorder

or the Secretary of State (Section 1309.38, Revised Code). This applies to chattels such as furniture, equipment, machinery, etc. This provision of the Uniform Commercial Code (in Section 1309.03 [C], Revised Code), is probably applicable to motor vehicles in those states where the security interest in motor vehicles is perfected by a filing with an official similar to our County Recorder or Secretary of State. In Ohio the security interest has not been heretofore considered valid or perfected, as to third parties, unless ''a notation of such instrument has been made by the Clerk of Court of Common Pleas on the face of such certificate * * *.'' (Section 4505.13, Revised Code.) This requires physical possession of the certificate for the purpose of making the notation. If the secured party can procure the notation of its security interest on the Ohio certificate, it has, of course, perfected its interest in Ohio under Section 4505.01 *et seq.*, Revised Code, and not Section 1309.01 *et seq.*, Revised Code.

''The protection given by the Uniform Commercial Code to buyers in ordinary course of business * * * does not apply to motor vehicles. Motor vehicles are subject to the motor vehicle certificate of title law. That statute provides that Uniform Commercial Code Article 9 does not permit or require the deposit, filing, or other record of a security interest covering a motor vehicle.'' 48 Ohio Jurisprudence 2d 593.

48 Ohio Jurisprudence 2d Section 12, discusses the rules, chiefly as contained in Section 1309.03 (C), Revised Code, pertaining to certain property brought into Ohio already subject to a security interest which has attached and may have been perfected under the laws of another jurisdiction. This is followed by Section 13, page 255, which states:

''The special rules discussed in the preceding sections * * * do not apply where personal property is covered by a certificate of title issued under a statute of Ohio or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection; * * *

''In Ohio, indication on a certificate of title is neces-

sary for perfection of a security interest in motor vehicles or watercraft.''

''With respect to motor vehicles, the Certificate of Title Law governs filing requirements, rather than the Uniform Commercial Code.'' 48 Ohio Jurisprudence 2d 499.

It is, therefore, the judgment of the court that in its enactment of Section 1309.03 (C), Revised Code, the Legislature did not intend that this apply to motor vehicles. Had it so intended, it could have so provided, together with the means whereby a security interest in motor vehicles could be perfected otherwise than as now provided by law.

It is obvious that the reason the plaintiff has not perfected its security interest in Ohio (filing, notation on the certificate by the clerk, etc.) under Section 1309.03 (C), Revised Code, is that such section is not applicable to motor vehicles and there are no means provided by law for so doing.

(2) *Sections 4505.04 and 4505.13, Revised Code, and the court* decisions applicable thereto:

In the case of *Kelly Kar Co.* v. *Finkler*, 155 Ohio St. 541, the Supreme Court of Ohio in syllabus 5, held that the holder of a conditional sales contract executed in a state other than Ohio, and which conditional sales contract is not noted on any Ohio Certificate of Title cannot prevail in an action in replevin against one in Ohio who purchased the automobile in good faith and for value from one in possession of said automobile and who held an Ohio Certificate of Title which did not contain a notation of the conditional sales interest.

*Commercial Credit Corporation* v. *Reising*, 96 Ohio App. 445 and *Fayette Investment Corporation* v. *Jack Johnson Chevrolet Co.*, 119 Ohio App. 111, are to the same effect as *Kelly Kar.*

In *Commercial Credit Corporation* v. *Pottmeyer*, 176 Ohio St. 1, the Supreme Court followed its decision in *Kelly Kar.*

In *Atlantic Finance Co.* v. *Fisher*, 173 Ohio St. 387, the

court held "that a thief cannot convey valid title to a stolen motor vehicle although the certificate of title appeared valid on its face."

In *State, ex rel. Hertz Corp.,* v. *Rice,* 14 Ohio St. 2d 34, the Supreme Court held that an Ohio Certificate of Title was not required before an owner, who possessed a Michigan automobile title, could maintain an action in conversion on the strength of its Michigan title and that an action in conversion could lie by the owner of a stolen car against a person who held a presumptively valid Ohio Certificate of Title.

The Hertz Company owned a 1964 Chevrolet. A Michigan Certificate of Title showing the Hertz ownership of the car has been issued. A person using the fictitious name of Harold A. Diamond rented the car, brought it into Ohio and attempted to sell it to Carl F. Weissenberger Chevrolet, Inc. in Toledo. Weissenberger refused to purchase the car until Diamond secured an Ohio Certificate of Title and assigned the same to Weissenberger.

On July 27, 1964, the Lucas County clerk of courts issued a certificate of title for the vehicle to Diamond upon forged documents purporting to be issued by the state of New York showing that Diamond had purchased the same from another fictitious person named Ruttman.

The same day, Weissenberger purchased the automobile from Diamond for $1,900, took an assignment of his Ohio Certificate of Title and obtained an Ohio Certificate of Title in its own name on the following day.

On July 31, 1964, Weissenberger sold the automobile for $2,600 to John E. Brisbin, a bona fide purchaser for value without notice, and the Lucas County clerk of courts then issued an Ohio Certificate of Title to Brisbin.

The court said at page 39:

"We see no impediment to Hertz bringing an action for conversion against Weissenberger based on constructive notice of the conversion by Diamond without an Ohio Certificate of Title as evidence of ownership. We have never held that, under the Ohio Motor Vehicle Certificate of Title Act, a converter or one taking from him 'with

notice of the conversion' can defeat the owner's right to recoup his loss in an action for conversion by showing that he holds, or has held, a subsequently issued and presumptively valid certificate of title.''

The statement ''based on constructive notice of conversion'' is significant.

In *Hardware Mutual Casualty Co.* v. *Gall*, 15 Ohio St. 2d 261, the Supreme Court overruled paragraph 3 and 4 of the syllabus in the *Pottmeyer case* and approved paragraph 3 of its syllabus in the *Atlantic Finance* v. *Fisher case*, and approved paragraph 1 and 2 of the syllabus in the *Hertz case.*

Page 268:

''A thief cannot convey valid title to a stolen motor vehicle to a bona fide purchaser for value without notice, notwithstanding the correctness of the manufacturer's serial number appearing on an apparently valid certificate of title, absent any question of estoppel arising from an act of the owner.''

The *Gall case* emphatically, and we assume finally, holds that the Ohio Certificate of Title Law does not provide any protection, absent any question of estoppel, to a bona fide purchaser for value of a stolen motor vehicle without notice, although the certificate of title used in the purported transfer appears valid on its face. It overruled that portion of the *Pottmeyer* decision which had held that ''an Ohio bona fide purchaser of a motor vehicle may be protected whether his Ohio Certificate of Title resulted from false representation of a swindler or a thief.''

It is obvious that *Gall* not only eliminated any protection provided by the Ohio Certificate of Title Law to a bona fide purchaser for value where his Ohio Certificate of Title resulted from the activity of a thief but it also inferentially eliminated such protection where his ''Ohio Certificate of Title resulted from fraudulent representation of a swindler.'' The failure of the Ohio Certificates of Title of the defendants to contain a notation of the security interest of the plaintiff obviously resulted from the ''fraudulent representation of a swindler.''

The *Gall* decision constitutes a substantial judicial erosion of the Ohio Automobile Title Act and the lack of a notation of plaintiff's security interest, which resulted from fraudulent representations of a swindler, on defendant's Ohio Certificate of Title does not now immunize the defendants from an action in conversion.

*Gall specifically overruled* paragraphs 3 and 4 of the syllabus of *Commercial Credit Corp.* v. *Pottmeyer*, 176 Ohio St. 1, which had provided:

Syllabus No. 3:

"One who claims a right, title or interest in or to a motor vehicle *but whose claim is not noted upon any Ohio Certificate of Title cannot prevail in an action in replevin against the purchaser in Ohio of such motor vehicle, who acquired possession in Ohio of such vehicle together with an apparently valid Ohio Certificate of Title therefor in good faith and without notice of any right, title or interest not set forth in the Certificate of Title.*" *Kelly Kar* v. *Finkler followed.* (Emphasis ours.)

Syllabus No. 4:

"An Ohio bona fide purchaser of a motor vehicle may be protected whether his Ohio Certificate of Title resulted from the fraudulent misrepresentations of a swindler or of a thief."

It is now the law of Ohio that in a controversy between two innocent parties with reference to a motor vehicle that, absent any question of estoppel, an apparently valid Ohio Certificate of Title will *not* provide protection against the claim of a person whose ownership of the car or whose interest in the car, was affected by the fraudulent misrepresentations of a swindler or a thief.

A person cannot now be divested of his rights in a motor vehicle by a thief or the fraudulent misrepresentations of a swindler.

It is now the law, as pronounced by the Supreme Court of Ohio, that where such events have occurred, an Ohio Certificate of Title provides no more protection to one who comes into possession of a presumably valid ownership of a motor vehicle, than does the Bill of Sale provided with

any other chattel. The title and rights are as valid as any one from whom they stem. *Caveat emptor!*

Sections 4505.04 to 4505.13, Revised Code, do not now constitute bars to a recovery by the plaintiff under the averments of its amended petition.

*(3) The law of conversion as applicable to the facts as averred in the amended petition.*

The interest of plaintiff is that of a general owner of the car (see *Robinson, supra*). As such it had and has the right of possession to it.

Prosser on Torts, p. 69:

"There is no apparent reason why a bailor, a mortgagee, a conditional seller, or any other holder of a special or limited property interest, which will often be more important and valuable than the mere possessory rights, should be permitted to recover for the conversion to the extent of his interest—or in other words, to compel the defendant to buy him out. If this remedy is not to be called an action for conversion, it is at least the same thing by another name."

Page 66:

"Conversion has been defined as an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession. The fundamental idea underlying the tort is that of interference with the dominion or control over the chattel incident to some general or special ownership, rather than with the physical condition of the chattel itself."

*Railroad Co.* v. *O'Donnell*, 49 Ohio St. 489, at p. 497:

"* * * a wrongful detention of chattels, will constitute a conversion."

Prosser on Torts, p. 67:

"For a conversion, the measure of damages is the full value of the property; in effect, the defendant is compelled to buy it at a forced sale."

Page 70:

"A conversion can only result from intentional conduct. For merely negligent interference, such as loss or

damage to the goods, the remedy is an action for negligence. * * *''

''The intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.''

Page 71:

''A purchaser of stolen goods or an auctioneer who sells them in the utmost good faith becomes a converter, since his acts are an interference with the control of the property. A mistake of law or fact is no defense. 'Persons deal with the property in chattels or exercise acts of ownership over them at their peril,' and must take the risk that there is no lawful justification for their acts. The essential problem is whether the interference is of so serious a character as to require the defendant to buy the goods.''

Page 74:

''It is a serious interference with the owner's control of the goods to refuse to surrender possession to him when he is entitled to it. A defendant who has come rightfully into possession in the first instance, as for example by a bailment, becomes a converter when he refuses to deliver on demand. Since there has been no wrongful taking or disposal of the property, demand and refusal are necessary to complete the tort.''

Page 77:

''The conversion is complete when the defendant takes, detains or disposes of the chattel. At that point, it is the traditional view that the plaintiff acquires the right to enforce a sale, and recover the full value of the property.''

It is the contention of the plaintiff that a defendant herein may be held liable in a conversion action for any act constituting an exercise of control and dominion over the chattel of another so that the owner could not, had he chosen to do so, have exercised that perfect control over the chattel which he might have done except for the adverse act of the party complained of, even though the person complained of, had no notice of the interest or rights of the owner. General statements of law to such effect have

been heretofore set out herein. The case of *The First National Bank of Bay Shore* v. *Stamper* (1966), 93 N. J. Supreme Ct. 150, 225A 2d 162, has been cited in support of such proposition as well as support for the plaintiff's contentions with reference to the applicability of Section 1309.13 (C), Revised Code. The nonapplicability of Section 1309.13 (C), Revised Code, has previously been discussed. To hold that the Birkett L. Williams Co. could be held liable to plaintiff in an action in conversion when on November 25 and on November 28, 1966, without any notice or knowledge of plaintiff's interest in the car, it accepted it as a trade-in from Mr. Marino and had an Ohio title thereupon issued in its name would not be in accordance with present Ohio law or would a like holding with reference to the purchase of the car on November 2, 1966, by Mr. Marino.

The *Hertz case* appears to limit the right to recover against defendants in an action for conversion to those who have actual or constructive notice of the prior conversion by the thief or swindler.

Page 39:

"We have never held that, under the Ohio Motor Vehicle Certificate of Title Act, a converter or one taking from him *with notice of the conversion* can defeat the owner's right to recoup his loss in an action for conversion by showing that he holds or has held a subsequently issued and presumptively valid Certificate of Title."

We consider, therefore, that notice of the original conversion is a prerequisite to a cause of action in conversion being asserted against one taking from a thief or a swindler. That:

(1) a person who possesses a motor vehicle that has been stolen and his Ohio Certificates of Title to it fails to show the valid ownership or,

(2) a person who possesses a motor vehicle whose Ohio Certificate of Title, because of fraudulent maneuvers by another, fails to contain a notation of a valid security interest therein, and who is not the original converter (*i. e.* a thief or one who by fraudulent maneuvers procured

the issuance of an Ohio Certificate of Title which fraudulently failed to contain a notation thereon of a valid security interest) is only liable in an action in conversion for acts, such as depriving the general owner of its use or possession, the transfer of ownership or possession to a third party, etc. that accrues *after* notice of the (original) conversion by a thief or of the acts of one who procured the issuance of a fraudulent Ohio Certificate of Title.

A cause of action in conversion is stated against (1) a person who had been in possession of a car and transferred his possession and claimed ownership of it to a third party after notification by the general owner of his interest in the car; and (2) the third person who accepted such transfer and detained it from the general owner after like notice.

We hold that the defendants may be held liable in conversion for only such acts of conversion as they committed following notice on December 16, 1966, of the plaintiff's interest in the car. These consist of Birkett L. Williams Co. causing the issuance of a Certificate of Title to itself on January 6, 1967, its assignment and transfer of the title and the car to Andrew Marino on January 10, 1967, and his acceptance of them—all after notice of plaintiff's interest.

When a person possessing a car is notified by the owner of his interest in the car, the person possessing the car cannot then transfer it and the Ohio Certificate of Title to it to a third person without subjecting himself to liability to the general owner, in an action for conversion. Also, after like notice, a third party may not accept the transfer of the car and the Ohio Certificate of Title without also subjecting himself to liability to the general owner in an action for conversion. A jury may hold that under such circumstances a defendant may be liable for both compensatory and punitive damages.

The amended petition avers notice by the plaintiff to both defendants on or about December 16, 1966, of its interest in and to the car, together with acts of conversion by both defendants after such notice or notices.

Since by the pronouncements by the Supreme Court of Ohio, the Ohio Certificate of Title Act does not now provide the protection or immunity from an action for conversion that is claimed by the defendants, it therefore follows that the amended petition of the plaintiff states a cause of action against both defendants in the respects herein specified.

Counsel for the plaintiff shall prepare a journal entry finding that the amended petition does state a cause of action in the respects herein specified against both defendants, and it shall overrule the demurrer of each defendant in accordance with this memorandum. He shall submit the journal entry for approval by opposing counsel. Such entry should further provide that answers of the defendants shall be filed within fifteen (15) days after the signing of the journal entry by the court and that the case shall be placed at the head of the trial list of March 3, 1969.