214 N.W.2d 384 (1974)
191 Neb. 198
COMMUNITY CREDIT CO., a corporation, Appellee Cross-Appellant,
v.
Joe GILLHAM, d/b/a Gillham's Auto Sales, Appellant Cross-Appellee.
No. 39018.
Supreme Court of Nebraska.
January 25, 1974.
*386 Robert E. Paulick, Grand Island, for appellant.
O. Wm. VonSeggern, of Cunningham, Blackburn & VonSeggern, Grand Island, for appellee.
Heard before WHITE, C. J., McCOWN and NEWTON, JJ., and LYNCH and WARREN, District Judges.
WARREN, District Judge.
This is a replevin action by plaintiff Community Credit Co., a Minnesota corporation, for the return of a 1971 Hornet automobile, or the value thereof, from the defendant Joe Gillham, doing business as Gillham's Auto Sales, of St. Paul, Nebraska. After two special findings by the jury, the court entered judgment for plaintiff for $1,700. Defendant has appealed and plaintiff has cross-appealed.
The evidence establishes that on April 15, 1971, Jean C. Grapentin, then residing in Hennepin County, Minnesota, purchased a new 1971 Hornet automobile from plaintiff's assignor under a conditional sales contract which was signed by her husband Stanley C. Grapentin as guarantor. Pursuant to that transaction plaintiff filed a financing statement on April 19, 1971, in the office of the register of deeds of Hennepin County, Minnesota. Before a recent enactment which became effective October 1, 1972, Minnesota was a nontitle state, and hence Mrs. Grapentin obtained only a registration card from the Minnesota Motor Vehicle Division. The Minnesota registration card did not provide a space for listing of liens and encumbrances. The payments on the conditional sales contract became 30 days past due in October 1971. In the first part of October 1971, Stanley C. Grapentin brought the automobile to Grand Island, Nebraska, where he stayed temporarily while frequenting used car lots with a view to trading off his wife's automobile for a different car. With his estranged wife in California, Stanley C. Grapentin, identifying himself as Jean C. Grapentin, endorsed the Minnesota registration card before a Grand Island notary public, then signed his wife's name to a Nebraska application for a certificate of title in the office of the county clerk of Hall County, and on November 12, 1971, obtained a "clear" Nebraska certificate of title in the name of Jean C. Grapentin showing no liens or encumbrances. He then again signed his wife's name to the assignment portion of the Nebraska title, before a St. Paul, Nebraska, notary public, and on November 15, 1971, sold the automobile to the defendant for a stated consideration of $2,285. which consisted of $900 cash and an older automobile. Plaintiff first *387 learned that the automobile might be in Nebraska in late November or early December 1971, and inquired of the defendant as to the whereabouts of the automobile. Defendant had sold the Hornet automobile on December 3, 1971, to a man in Denver, Colorado, whom he could not name at the time of trial, for "$1900.00 and something," and defendant testified that he had made no record of the sale. The testimony of Stanley C. Grapentin was offered by deposition taken at the Nebraska Penal and Correctional Complex 2 weeks before the trial.
The question presented by this fact situation is whether defendant purchased the 1971 Hornet automobile subject to plaintiff's security interest.
The trial court submitted two issues to the jury: (1) Whether or not Stanley C. Grapentin had the automobile in Nebraska for more than 4 months; and (2) the value of the automobile on January 17, 1972. The jury returned special findings that Grapentin had the automobile in Nebraska less than 4 months and fixed the value at $1,700 on the date the petition in replevin was filed. By submitting only these two issues, the trial court in effect found that plaintiff was entitled to recover if the jury found that the automobile had not been in Nebraska for at least 4 months prior to its sale to defendant.
The broad problem of maintaining security interests in highly mobile, heavily financed and readily saleable vehicles has caused most states to enact "Certificate of Title" laws requiring that all liens and encumbrances (security interests) be noted on the face of the title certificate. In 1971, Minnesota had no such title law, while Nebraska did. The Uniform Commercial Code has attempted to provide certainty in this field of commerce by the provisions of section 9-103, U.C.C.
Section 9-103, U.C.C., has been entirely rewritten effective September 2, 1973, to provide specific rules for goods covered by a certificate of title issued under a statute of this state or of another jurisdiction. See s. 9-103(2), U.C.C., as amended, Laws 1973, L.B. 363, s. 1. The references which follow are necessarily to section 9-103, U. C.C., as it existed before the 1973 amendment.
Section 9-103(3) U.C.C., provides: "If personal property * * * is already subject to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached. * * * If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state."
Defendant argues that the perfection of plaintiff's security interest is governed by the laws of the state which issued the certificate of title (Nebraska) and cites subsection (4) of section 9-103, U.C.C., which provides: "Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate."
Defendant contends that since the Nebraska certificate of title act requires noting of the security interest on the title, the plaintiff cannot assert a valid security interest in the automobile as against the defendant holding a clear Nebraska certificate of title. Here, there was a substantial question as to whether or not the defendant was a bona fide purchaser without notice of plaintiff's security interest, but our decision will be based on the premise that *388 defendant had no prior notice when he purchased the automobile.
By official comment 7 to section 9-103, U.C.C., the editorial board of the Uniform Commercial Code attempts to clarify the application of the above-quoted subsections (3) and (4), by stating: "Collateral other than accounts, contract rights, general intangibles and mobile equipment may be brought into this state subject to a security interest which has attached and may have been perfected under the laws of another jurisdiction. If the property is covered by a certificate of title, subsection (4) applies. In other cases, under subsection (3) this article applies from the time the collateral comes into this state, except that (1) the validity of the security interest is determined by the law of the jurisdiction where it attached * * * and (2) if the security interest was perfected in the jurisdiction where the collateral was kept before being brought here, it continues perfected in this state for four months after the collateral is brought in, although the filing requirements of this article have not been complied with here. * * * Subsection (3) proceeds on the theory that not only the secured party whose collateral has been removed but also creditors of and purchasers from the debtor in this state should be considered. The four month period is long enough for a secured party to discover in most cases that the collateral has been removed and to file in this state; thereafter, if he has not done so, his interest, although originally perfected in the state where it attached, is subject to defeat here by those persons who take priority over an unperfected security interest."
The comment makes it clear that subsection (4) does not apply to an automobile which was sold under a conditional sales contract in a state which does not require indication on a certificate of title of any security interest in the property as a condition of perfection, and which was subsequently brought into a state which had such a requirement. Here, the automobile was brought from a nontitle state (Minnesota) to a title state (Nebraska), and pursuant to section 9-103(3), U.C.C., the question of whether or not plaintiff had a perfected security interest in the automobile when it was brought to Nebraska in October 1971, is governed by Minnesota law.
A recent annotation at 42 A.L.R.3d 1168, deals extensively with the problem of priorities between a vendor's lien and a subsequent title or security interest obtained in another state to which the vehicle was removed. The annotation states at page 1189: "Where an automobile has been transferred to the forum state from a nontitle state, courts in jurisdictions adopting UCC s. 9-103 generally have resolved questions as to priorities between the vendor's lien and subsequent titles or security interests obtained following removal of the vehicle to the forum state by reference to the rules stated in s. 9-103(3)."
Section 9-103(3), U.C.C., has been construed to require enforcement of the foreign vendor's lien under similar fact situations involving automobiles brought from nontitle to title states in the leading cases of First National Bank v. Stamper, 93 N.J.Super. 150, 225 A.2d 162 (1966), and Churchill Motors, Inc. v. A. C. Lohman, Inc., 16 A.D.2d 560, 229 N.Y.S.2d 570 (1962). Uniformity of decisions construing the Uniform Commercial Code is as desirable as the adoption of the Uniform Commercial Code itself. Two states in which the Uniform Commercial Code does not apply to motor vehicle titles have reached the same result in similar fact situations under the rule of comity. First National Bank v. Chuck Lowen, Inc., 128 Colo. 104, 261 P.2d 158 (1953); Doenges-Glass, Inc. v. General Motors Acceptance Corp., 28 Colo.App. 283, 472 P.2d 761 (1970); General Motors Acceptance Corp. v. Birkett L. Williams Co., 17 Ohio Misc. 219, 46 Ohio Op.2d 311, 243 N.E.2d 882 (1969). Louisiana, which has not adopted the Uniform Commercial Code, followed the same general principle in General Motors *389 Acceptance Corp. v. Nuss, 195 La. 209, 196 So. 323 (1940).
Prior to the adoption of the Uniform Commercial Code in Nebraska, this court held that under the doctrine of comity the Oklahoma assignee of the original vendor under an installment sale contract should prevail over a Nebraska bona fide purchaser at an execution sale who obtained a "clear" Nebraska certificate of title. Universal C.I.T. Credit Corp. v. Bogt, 165 Neb. 611, 86 N.W.2d 771 (1957). Therefore, the adoption of the Uniform Commercial Code in Nebraska has merely modified former substantive case law in limiting the period of time during which a foreign vendor or lienholder would have absolute priority over a Nebraska purchaser to a period of 4 months, unless further affirmative action is taken in Nebraska under the Uniform Commercial Code to perfect the security interest.
"The four-month period provided in subsection 3, above, is an absolute period of protection of the vendor's security interest, designed to give him adequate time to make an investigation and locate the property. If the vendor fails to file within the four-month period, the protection of his security interest ceases upon the expiration thereof, and his unperfected security interest is thereafter subject to be defeated in the same way in which any unperfected security interest may be defeated under the Code. A subsequent purchaser for value, without notice of the unprotected security interest, would take a superior title. * * * But, a prior purchaser who had purchased during the four-month period of statutory protection is not retroactively given a superior title." First National Bank v. Stamper, supra.
We hold that under the provisions of section 9-103, U.C.C., the holder of a security interest in an automobile which was perfected pursuant to the laws of a nontitle state, who had no knowledge of its removal to this state, has priority over a Nebraska purchaser without knowledge of the security interest who purchases the automobile with a clear Nebraska title within 4 months of its arrival in Nebraska.
Minnesota Law in 1971 provided generally for filing of a financing statement on motor vehicles in the office of the register of deeds in the county of the debtor's residence. Ss. 336.9-102, 336.9-302, and 336.9-401, Minnesota Statutes, 1971.
The question of fact for determination here was whether defendant purchased the automobile within 4 months from the time it was brought here. While the only evidence introduced on that question established that the automobile was brought to Nebraska in the first part of October 1971, and was sold to defendant on November 15, 1971, the court, out of an abundance of caution, submitted that special issue to the jury, which returned a finding "that Stanley C. Grapentin had the 1971 Hornet Station Wagon automobile less than four months in the State of Nebraska."
The defendant having disposed of the automobile prior to the filing of the replevin action, the plaintiff was entitled to recover its value. The jury fixed that value in its second finding at $1,700.
On March 8, 1973, 41 days after the final judgment was entered for plaintiff, and after perfecting his appeal to this court, the defendant filed in the District Court a second motion for a new trial, on the grounds that the deposition of Stanley C. Grapentin had been allowed in the jury room and was used by one of the jurors during jury deliberations. Four affidavits of jurors were filed prior to the hearing on the second motion for new trial, which was overruled on May 11, 1973. The affidavits were neither offered nor received in evidence at the hearing on the motion, and the same do not appear in the bill of exceptions.
This court has stated as recently as Metschke v. Department of Motor Vehicles, 186 Neb. 197, 181 N.W.2d 843 (1970), the long standing rule that: "* * * affidavits *390 in support of a motion for new trial must be offered in evidence and preserved in and made a part of a bill of exceptions to be considered by this court. `This court will not review testimony in the form of affidavits used in the trial court on the hearing of a motion for a new trial, unless such affidavits have been included in and presented by a bill of exceptions.'"
In addition, the record contains no allegation or showing by defendant which would bring him within the two exceptions exempting one from the mandatory 10-day limit for filing a motion for new trial prescribed by section 25-1143, R.R.S. 1943. The jury returned its verdict on November 30, 1972; the court entered its judgment thereon on January 26, 1973; and defendant had until February 5, 1973, in which to file his first motion for new trial. There is nothing whatever in the record to show defendant was unavoidably prevented during the intervening 67 days from interviewing the jurors and ascertaining the facts regarding the presence and use of the deposition in the jury room. "`The words "unavoidably prevented" as used in section 29-2103, R.R.S.1943, are equivalent in meaning to circumstances beyond the control of the party desiring to file the motion for new trial. The law requires diligence on the part of clients and their attorneys, and the mere neglect of either will not entitle a party to relief on that ground.'" Vacek v. Marburger, 188 Neb. 180, 195 N.W.2d 515 (1972). Counsel is not free to arbitrarily delay the questioning of jurors until convenient, in the face of the 10-day limit for filing of a motion for new trial, and the burden is upon him to show he was unavoidably prevented from ascertaining the facts within the time limited, when he does so delay. The overruling of the second motion for new trial was correct and defendant's second assignment of error is without merit.
Plaintiff has cross-appealed on the ground that the jury was improperly instructed to fix the value of the automobile as of the date of filing of the petition on January 17, 1972, rather than on the date of the wrongful taking on November 15, 1971. Plaintiff cites Hickman-Williams Agency v. Haney, 152 Neb. 219, 40 N.W.2d 813 (1950), as holding that if property is not returned the measure of damages is the value of the property as proved, together with interest thereon from the date of unlawful taking. Plaintiff confuses the date from which interest shall commence to run with the date the chattel is to be valued.
This court has construed section 25-10,104, R.R.S.1943, in holding: "The `value thereof' is instead of a return of the property when a return cannot be had, and should be the equivalent of the property itself as it was at the time of trial * * *." Wallace v. Cox, 100 Neb. 601, 160 N.W. 992 (1916). The trial took place on November 29 and 30, 1972, and the trial court was in error in instructing the jury to value the automobile as of the date of filing of the replevin action; however, plaintiff can hardly assert that the error was prejudicial when it resulted in having the automobile valued more than 10 months prior to the trial and hence as a newer automobile by that length of time. Section 25-853, R.R.S.1943, is applicable to plaintiff's cross-appeal and requires the court to disregard errors and defects not affecting the substantial rights of the adverse party. We hold the error not prejudicial to the plaintiff and deny its cross-appeal.
We affirm the judgment of the trial court.
Affirmed.